425 A.2d 419

**Angela M. HAYES, Appellant,**

v.

**ERIE INSURANCE EXCHANGE, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 2, 1980.

Decided Feb. 5, 1981.

Joseph A. Yochim, Colussi, Yochim, Skiba & Vogel, Erie, for appellant.

T. Warren Jones, MacDonald, Illig, Jones & Britton, Erie, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On January 6, 1976, appellant, Angela Hayes, was struck and seriously injured by an automobile while crossing a street in Erie. The vehicle was insured by appellee, Erie Insurance Exchange (Erie), under the Pennsylvania No-Fault Motor Vehicle Insurance Act (the Act), 40 P.S. §§ 1009.101–1009.701 (supp. 1980–81). Mrs. Hayes did not carry insurance on her own vehicle.

Mrs. Hayes submitted a claim with Erie for personal injury protection benefits pursuant to § 204(a)(4) of the Act, and submitted all necessary proofs of damages. Erie denied the claim asserting the legislature could not have intended to "penalize" the insurance carrier of the vehicle owner where the victim failed to comply with the mandate of § 104 of the Act requiring all owners of vehicles to obtain no-fault insurance.

Mrs. Hayes filed an action in assumpsit against Erie in the Court of Common Pleas of Erie County, which court entered summary judgment in favor of Mrs. Hayes, holding that personal injury protection benefits were recoverable from Erie. That court refused, however, to make an award of counsel fees, see § 107 of the Act, 40 P.S. § 1009.107. On appeal, the Superior Court affirmed both aspects of the trial

court's decision. *Hayes v. Erie Insurance Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978).

Thereafter, Erie promptly paid the amount due, with interest calculated at the rate of 6% per annum. Mrs. Hayes insisted she was due interest at the rate of 18% pursuant to § 106(a)(1) of the Act, 40 P.S. § 1009.106(a)(1), relating to overdue payments. Upon Erie's denial of that claim, Mrs. Hayes filed a motion for assessment of damages at 18% and for attorney's fees, again with the Court of Common Pleas of Erie County. That court denied the motion, which denial was upheld by the Superior Court, reasoning that Erie's "good faith and reasonable cause" for its initial denial of Mrs. Hayes' claim excused it from the 18% interest payment as well as from the claim for attorney's fees. *Hayes v. Erie Insurance Exchange*, 276 Pa.Super. 424, at 427, 419 A.2d 531, at 532 (1980).

This Court then granted Mrs. Hayes' petition for allowance of appeal. For the reasons stated below, we reverse in part and affirm in part.

Unlike most cases wherein the courts have been called upon to glean the legislature's intent from various provisions of the No-fault Act, this is one of the few cases in which the following statement can be made: the intent of the legislature is clear. Section 106, "Payment of claims for no-fault benefits", provides, in relevant portion:

(a)(2) *No-fault benefits are overdue if not paid within thirty days* after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained, unless the obligor designates, upon receipt of an initial claim for no-fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within fifteen days after the close of each such period. If reasonable proof is supplied as to only part of a claim, but the part amounts to one hundred dollars ($100) or more, benefits for such part are overdue if not paid within the time mandated by this paragraph. . . . *Overdue payments bear interest at*

*the rate of eighteen per cent (18%) per annum.* (emphasis added)

There is no uncertainty in this section which defines "overdue" payments simply in terms of specified time periods, and simply states the consequences of a payment which is "overdue"—such payment bears 18% interest. There is no suggestion in § 106 that a late payment is any less overdue because the insurer denied the claim in "good faith and with reasonable foundation".

Nevertheless, the Superior Court engrafted a "good faith/reasonable foundation" exception upon § 106 on the following reasoning:

"That the 18% interest on overdue payments is a penalty is beyond dispute; the normal legal rate being 6%. And should the penalty be enforced indiscriminately a serious constitutional question would arise with regard to this section as it would attempt to discourage access to the courts by insurers, even in good faith and for reasonable cause. In this case, payment was withheld in good faith for reasonable cause and no penalty should be enforced against [Erie]. It also follows that no attorney's fees would be payable by [Erie]. 276 Pa.Super. 424, at 428, 419 A.2d 531, at 532 (1980).

Whether the 18% interest is a "penalty" (it is *not,* as shall be demonstrated *infra*) is of no moment to the interpretation of § 106 nor to ascertaining the legislative intent for "[w]hen the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(b) (supp. pamphlet 1980–81).

Erie argues that, as a "good faith/reasonable foundation" defense may be successfully asserted to a claim for attorney's fees, under § 107(3),[1] this indicates the legislature

1. That section provides:

 (3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

similarly could not have intended to "penalize" insurance carriers by imposing 18% interest on overdue payments wherein the delay was in "good faith and with reasonable foundation". However, exactly the converse is true—the quite clear negative implication of the appearance of a "good faith/reasonable foundation" exception in § 107 coupled with its absence in the prior section, § 106, raises precisely the opposite inference. The legislature intended to create the exception to a claim for attorney's fees—they so indicated in § 107(3). The legislature did not intend to create the exception to a claim for 18% interest on overdue payments—they so indicated in § 106.

■ We hold, therefore, that where a payment is overdue as defined by § 106, 18% interest is owed on that payment regardless of the "good faith" of the insurer or the "reasonable cause" of the delay.

Erie and amicus curiae, the Insurance Federation of Pennsylvania, Inc., elaborate on the Superior Court's "serious constitutional question"—they argue that, unless § 106 be interpreted to include a "good faith/reasonable foundation" exception, that section will run afoul of several constitutional principles, namely, due process, equal protection (specifically, they assert there is an illegal classification which discriminates between no-fault insurers and all other types of insurance carriers) and free access to the courts. We disagree.

■ Of course, we must be mindful of the presumption in favor of constitutionality of lawfully-enacted legislation, i. e., an act of assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. *Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 16, 331 A.2d 198, 203 (1975); *Singer v. Sheppard*, 464 Pa. 387, 393, 346 A.2d 897, 900 (1975). Any doubts are to be resolved in favor of sustaining the legislation. *Id.*

Our case law has recognized that "the day has long passed when the Due Process Clause of the Fourteenth Amendment could be used to indiscriminately strike down state economic

regulatory statutes," *Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 189, 272 A.2d 487, 490 (1975), and that economic legislation will withstand a substantive due process challenge so long as the law is not "unreasonable, unduly oppressive or patently beyond the necessities of the case, and [so long as] the means which it employs [has] a real and substantial relation to the objects sought to be attained." *Id.*, 441 Pa. at 191–92, 272 A.2d at 491. (citations omitted). Equal protection analysis of commercial or business legislation follows similar lines.

"The Equal Protection Clause of both constitutions does not deny the State the power to treat different classes of persons [or corporations] in different ways, but does deny the right to legislate that different treatment be accorded to persons [or corporations] placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons [or corporations] similarly circumstanced shall be treated alike."

*Moyer v. Phillips*, 462 Pa. 395, 400–01, 341 A.2d 441, 443 (1975).

With these principles in mind, we proceed to the legislation in question. The legislature has carefully studied the motor vehicle accident insurance system in this Commonwealth, and has made the following findings:

The General Assembly hereby finds and declares that:

(1) motor vehicles are the primary instrumentality for the transportation of individuals;

(2) the transportation of individuals by motor vehicle over Commonwealth highways and other highways significantly affects intrastate commerce, particularly in metropolitan areas;

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle acci-

dents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

(4) to avoid any undue burden on commerce during the intrastate transportation of individuals, it is necessary and proper to have a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims;

(5) exhaustive studies by the United States Department of Transportation, the Congress of the United States and the General Assembly have determined that the present basic system of motor vehicle accident and insurance law . . . is not such a low-cost, comprehensive, and fair system;

(6) careful studies, intensive hearings, and some State experiments have demonstrated that a basic system of motor vehicle accident and insurance law which:

(A) assures every victim payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss; and

(B) eliminates the need to determine fault except when a victim is very seriously injured,

is such a low-cost, comprehensive, and fair system;

(7) adoption of the system described in paragraph (6) in place of the system described in paragraph (5) would remove an undue burden on commerce;

(8) throughout the Commonwealth there should be uniformity as to the essential elements of the system of motor vehicle accident and insurance law to avoid confusion, complexity, uncertainty, and chaos which would be engendered by a multiplicity of noncomplementary systems, but the need for a basic system does not require that the Commonwealth itself directly administer, operate, or direct the administration or operation of such system; and

(9) a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident

victims can save and restore the lives of countless victims by providing and paying the cost of services so that every victim has the opportunity to:

 (A) receive prompt and comprehensive professional treatment; and

 (B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen.

 (10) It is necessary to afford required coverages for motor vehicles to economically disadvantaged individuals at rates not so great as to deny such individuals access to insurance which it is necessary for them to have in order to earn income and to be or remain gainfully employed. § 102(a), 40 P.S. § 1009.102(a).

Prompted by these findings, the legislature enacted the comprehensive scheme of no-fault motor vehicle insurance with its avowed purpose to "establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." § 102(b), 40 P.S. § 1009.102(b).

■ Considering the extensive findings and the legitimate purpose to be attained, we cannot say that the 18% interest designed to assure prompt payment of claims is unreasonable, nor is it unrelated in a real and substantial way to the purpose sought. Neither is the classification improper merely because a no-fault insurer who unsuccessfully challenges a claim must pay 18% interest for the challenge while life, fire, etc. insurance carriers need only pay 6% interest as unsuccessful litigants. Each hazard or type of risk insured against has its own unique features and poses different problems of regulation. The general assembly has perceived a pressing need for revision of the motor vehicle accident insurance system, for the reasons stated in their findings, *supra.* Whether or not we agree with that determination, we cannot say the classification of no-fault insurers versus all other insurers is improper.

Our research indicates that courts have been practically unanimous in upholding the validity of statutes imposing attorney's fees and additional interest upon insurers who delay payment, regardless of their good or bad faith. *See* Annotation, *Validity of Statute Allowing Attorney's Fee to Successful Claimant But Not to Defendant, or vice versa*, 73 A.L.R.3d 515, 521 (1976) (see especially § 2 at 521–26 and § 14 at 564–73). Justice Cardozo laid to rest, many years ago the arguments advanced by Erie and amicus. *Life & Casualty Insurance Company v. Barefield*, 291 U.S. 575, 54 S.Ct. 486, 78 L.Ed. 999 (1934) dealt with an almost identical situation. In *Barefield*, the Arkansas legislature had provided that where fire, life, health or accident insurers wrongfully failed to make timely payments, such insurers would be liable for attorney's fees plus an additional 12% interest. The insurance company there argued that, unless such statute would be construed to include a "good faith/reasonable foundation" exception, it would violate due process, equal protection and "free access to the courts" principles. Justice Cardozo made the following observations, as apt today as they were in 1934:

Nothing in the Fourteenth Amendment forbids [the legislative procedure] here. The assurance of due process has not stereotyped bills of costs at the rates known to the Fathers. . . . Nor is there an unjust discrimination, an arbitrary denial of the equal protection of the laws, in laying the burden on insurers and not on all defendants. Diversity of treatment in respect of the costs of litigation has its origin and warrant in diversity of social needs. . . . Classification prompted by these needs is not tyrannical or arbitrary. As to that, the judgments of this court in situations precisely apposite have set a closure to debate. . . . We discover nothing arbitrary or oppressive in imposing such a contract upon the business of insurance, a business subject, as all agree, to control and regulation. *Id.* at 570–71, 54 S.Ct. at 484.

In considering precedent, Justice Cardozo noted that the same result had obtained even where some forms of insur-

ance, and not other forms, were affected by this type of legislation. *Id.* at 572, 54 S.Ct. at 485, citing *Fidelity Mutual Life Association v. Mettler,* 185 U.S. 308, 22 S.Ct. 662, 46 L.Ed. 922 (1901).

From the foregoing, it is clear the 18% interest provision of § 106 of the Act violates neither due process nor equal protection considerations, notwithstanding an insurer's "good faith and reasonable basis" for the delay.

 Finally, Erie's and amicus' "free access to the courts" argument, *see* Pa.Const. art. III, sec. 32, also must fail. The additional 12% interest that an insurer is faced with (the difference between the required 18% and the "normal" interest rate of 6%) is simply not "so heavy as to erect an unfair barrier against the endeavor of an honest litigant to obtain the judgment of a court." *Id.,* 291 U.S. at 574, 54 S.Ct. at 486. So long as an excessive measure is not meted-out, so long as the statute does no more than provide a reasonable incentive for the prompt settlement of just demands of a class admitting of special legislative treatment, then "[in] that event, the litigant must pay for his experience, like others who have tried and lost." *Id.* at 574, 54 S.Ct. at 485–86. That appellees characterize the 18% interest provision as a "penalty" is immaterial—it is the measure of the provision, not its label, that determines whether it denies free access. If the measure is reasonable, as it is here, there is no denial.

 We affirm the denial of attorney's fees in this case. The lower courts (the court of Common Pleas of Erie County twice and the Superior Court twice) have consistently found no evidence of bad faith on Erie's part. Furthermore, Erie's arguments on both their liability to Mrs. Hayes initially and on the 18% interest were reasonable, albeit wrong. Accordingly, § 107(3) relieves Erie of any liability for counsel fees.

The order of the Superior Court is reversed insofar as it denies appellant recovery of 18% interest under § 106 of the Act, and affirmed insofar as it denies appellant attorney's fees under § 107(3) of the Act.