## Steppling v. Pennsylvania Manufacturer's Association Insurance Company

*James R. Dailey,* for plaintiff.
*Joseph J. May,* for defendant.

NYGAARD, *J.,* April 20, 1982—This matter was originally scheduled for a trial before the court without a jury. At the time of pretrial conference on this matter, attorneys for both parties made oral motions for summary judgment. All facts material to a decision on the matter have been stipulated by the parties. There are no facts, material or otherwise, at issue. The essential facts upon which the court must base its decision are as follows:

1. Patricia Steppling, on February 21, 1977, resided in the household of Donald Steppling at 642 Stoneridge Drive, Allison Park, Pa.

2. On February 21, 1977, Donald Steppling carried

automobile insurance with Pennsylvania Manufacturers' Association Insurance Company, Policy Number 127600-849604-4 which provided security for Patricia Steppling in accordance with the provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act 40 P.S. § 1009 et seq.

3. On or about February 21, 1977, Patricia Steppling was involved in an automobile accident on Crane Road, Franklin Township, Erie County, Pa.

4. The insurance policy issued by Pennsylvania Manufacturers' Association Insurance Company, Number 127600-849604-4 is the applicable security for payment of basic and added loss benefits of Patricia Steppling. A copy of said policy is attached hereto and marked Exhibit A.

5. As a result of the accident on February 21, 1977, Patricia Steppling was hospitalized in St. Vincent Health Center, Erie, Pa., from February 21, 1977 until March 22, 1977, for reasonable and medically necessary services, resulting in reasonable charges of $12,073.77.

6. Pennsylvania Manufacturers' Association issued a check to St. Vincent Health Center on April 4, 1977 in the amount of $12,073.77 to pay for the expense of the claimant's hospitalization.

7. Said check was returned to Pennsylvania Manufacturers' Association because the hospital bill had already been paid by Blue Cross.

8. As a result of the accident which occurred on February 21, 1977, plaintiff was hospitalized at St. Francis General Hospital, Pittsburgh, Pa., from March 22, 1977 until July 6, 1977, receiving medically necessary services resulting in reasonable charges of $23,551.

9. Pennsylvania Manufacturers' Association again attempted to promptly pay this charge but

was notified that it had already been paid by Blue Cross.

10. As a result of the accident on February 21, 1977, Patricia Steppling was hospitalized at Broad Street Hospital and Medical Center, Philadelphia, Pa., the total expense for said hospitalization amounting to $5,295.10, said expense being reasonable, fair, and medically necessary.

11. Defendant attempted to pay the Broad Street Hospital and Medical Center bill referred to in paragraph 10 above, but it had already been paid by Blue Cross.

12. Reasonable proof of the medical expense referred to in paragraph 10 above has never been submitted to defendant and that if defendant is found obligated to pay said amount, no interest shall be charged for late payment. However, interest shall commence to run on April 19, 1982 if said obligation is not paid then.

13. Pennsylvania Manufacturers' Association Insurance Company has paid all other medical bills presented to them.

14. On February 21, 1977, Donald Steppling was employed by Salfucci Engineers, Inc., Pittsburgh, Pa., which supplied to him as a fringe benefit, at no cost to him, Blue Cross benefits under Group No. 51196-00 and policy number 187200720.

15. Said Blue Cross Group Policy provided benefits for the members of the household of Donald J. Steppling, including Patricia Steppling.

16. Reasonable attorney fees based on the actual time expended amount to $8,323.95.

## DISCUSSION

The primary issue for determination by this court may be stated as follows: May a policy holder, paying

two premiums for personal injury coverage, one to an automobile insurance carrier for No-fault coverage and one to a private Blue Cross Blue Shield plan for collateral, medical and hospital coverage, recover under both policies for injuries she sustained in an automobile accident?

The statutory provision pertinent to our determination is Section 203(b) of the No-fault Act, (40 P.S. § 1009.203(b)) which provides as follows:

"The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the survivor of a deceased victim, allowable expense, loss of income, work loss, replacement services loss and survivors loss. In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

Section 203(c):

"An insurer providing basic loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract of insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer by reason of the election of the owner or operator to provide substitute security."

Thus we see that Sections 203(b) and (c) contain the provision that the owner or operator of a motor vehicle may *elect* to provide security for basic loss

benefits through a group plan such as the one at issue here, Blue Cross Blue Shield. If such an election is made, his automobile insurance policy becomes excess coverage to his private plan for the basic loss benefits. When this election is made by the insured, the insurer must then reduce the premium of the insurance contract to reflect his reduced exposure through payment of basic loss benefits.

The Regulations (31 Pa. Code §66.1-203) establish specific prerequisites before an insured may take advantage of this option. Among other things, the regulations require that the named insured must sign a sworn affidavit, certifying the existence of the additional coverage, and, the additional coverage must meet certain minimum criteria.

If the insured has done all that is required of him he may then elect to designate that the collateral insurance is the primary source of coverage required by the No-fault Act.

This rate reduction option would appear to be an inducement to No-fault policy buyers to purchase collateral insurance, and thereby effect a savings by the resultant decrease in insurance premiums for policy buyers.

There is no question in this case that the insured made no election, and received no reduction in his premium payments. Even though this will result in a double payment to the insured, we hold that because the election was not made, designating Blue Cross Blue Shield as primary, she is entitled to recover from both policies of insurance.

The second issue by determination by this court is whether or not plaintiff is entitled to receive 18 percent interest on the amount of the hospital bills that were not paid by the No-fault carrier.

The pertinent sections to the No-fault Act with respect to this issue are found in Section 106(a)(2) which provide as follows:

"No-Fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact in amount of loss sustained unless the obligor designates upon receipt of an initial claim for No-Fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each period, in which case such benefits are overdue if not paid within fifteen days after the close of each period. . . . Overdue payments bear interest at the rate of 18% per annum per period."

Defendant argues that payments are not overdue for the reason that they were paid by another carrier (i.e. Blue Cross Blue Shield), citing J. C. Penny Insurance v. Liberty Mutual Insurance Company, 12 D. & C. 3d 340. The court rejects this argument. We have previously ruled that plaintiff is entitled to a "double-dip." Further, with this matter decided, we are convinced by the language of Hayes v. Erie Insurance Exchange 425 A. 2d 419, that plaintiff is entitled to insurance for overdue payments on either "dip."

We hold, therefore, that where a payment is overdue as defined by §106, 18 percent interest is owed on that payment regardless of the "good faith" of the insurer or the "reasonable cause" of the delay.

The final issue for determination is whether or not attorneys' fees should be awarded plaintiff.

The act at §107(3), provides in pertinent part:

"If, in any action by a claimant to recover no-fault benefits from an obligor, the Court determines that

the obligor has denied the claim or any significant part thereof without reasonable foundation, the Court may award the claimant's attorney a reasonable fee based upon actual time expended."

The amount and the reasonableness of the attorneys' fees have been stipulated by the Council. This leaves for determination by the court only the issue of whether or not they should be awarded at all.

The Supreme Court in Hayes v. Erie Insurance Exchange 425 A. 2d 419, at 424, upheld the Court of Common Pleas of Erie County which had denied counsel fees and seems to apply the "bad faith" standard. The Superior Court in Hayes v. Erie Insurance Exchange, 395 A. 2d 1370 (1978) in denying attorney's fees to plaintiff, held that where the issue is nonfrivolous, and one of first impression, such fact is entitled to a substantial weight in determining whether or not the denial of a claim is without "reasonable foundation." The Erie County Court of Common Pleas in Ion v. ETNA Casualty and State Auto Insurance, 63 ECLJ 132 (1978), applying both of these standards awarded attorney's fees when the company "despite the fact that it had in its possession all the facts available, required this man to hire legal counsel and seek a determination in court. In our opinion, this violates the spirit of the No-fault Act . . .," at 134.

Neither counsel nor this court has been able to find any cases that have directly litigated the primary issue for determination in this case. Therefore, we can assume that it is a case of first impression in Pennsylvania. However, defendant had all of the facts in his possession necessary to make a determination. Further, the clear language of the

statute requires that plaintiff make an election, and that defendant give a reduction in premiums. Neither had been done in this case. Instead, defendant apparently chose to litigate the issue of whether or not plaintiff would be entitled to a double recovery, even in spite of the fact that it (defendant) had received full premiums on its policy of automobile insurance. Because of the fact that defendant chose to "test this case," plaintiff was constrained to hire atorneys and incur expenses much to her financial detriment. Accordingly, the court finds that defendant withheld claimant's no-fault benefits, without reasonable foundation. An insurer cannot simply grasp at an unlitigated straw, and hope thereby to avoid or partially avoid its obligations. Or, at least if it does so, it must do so at its own peril with respect to both interest and attorney's fees. Accordingly, we enter the following

## ORDER

And now, April 23, 1982, the court finds as follows:

1. For plaintiff in the amount of $40,919.87.

2. The amount of $35,624.77 is to bear interest at the rate of 18 percent per annum from the time said payment was overdue until the time of payment to the claimant, plaintiff.

3. The amount of $5,295.10 is to bear interest at the rate of 18 percent per annum from April 19, 1982 until the time of payment to the claimant, plaintiff.

4. Reasonable attorneys' fees are awarded to plaintiff in the amount of $8,223.95.

5. Costs of suit to be taxed to defendant.