## Smiley v. Ohio Casualty Ins. Co.

*William M. Radcliffe*, for plaintiffs.
*Stephen P. McCloskey*, for defendant.

ADAMS, *J.*, July 21, 1983—In an action in as-

sumpsit filed by Glenn W. Smiley, individually and as administrator of the Estate of Sandra L. Smiley, deceased, along with Betty S. Smiley and Glenn Douglas Smiley (hereinafter plaintiffs), against Ohio Casualty Company (hereinafter Ohio), plaintiffs sought to recover (1) work loss benefits; (2) added work loss benefits; (3) attorney's fees; and (4) damages for delay in payment of ten percent under Pa.R.C.P. 238, in addition to the 18 percent interest allowed under the No-fault Act.

By an order of May 23, 1983, this court approved a compromise of plaintiffs' claim for basic work loss benefits of $15,000, with interest of $10,575.

All remaining issues, including plaintiffs' entitlement to added work loss benefits in the amount of $10,000, interest accruing on the $10,000 from the date of death, damages for delay in payment in the amount of ten percent, plaintiffs' entitlement to attorney's fees for all aspects of this litigation and Ohio's right of credit or set-off for its subrogation rights, were expressly reserved, and are presently before this court.

For the reasons discussed herein, it is the court's opinion that Ohio is obligated to pay plaintiffs for "added work loss benefits," with interest of 18 percent per annum from the date of death. The claim for attorney's fees and for damages in the amount of ten percent per annum for delay in payment under Pa.R.C.P. 238 is denied.

A non-jury trial was held on May 23, 1983. The court adopts and incorporates as a part of this opinion the stipulation of facts of record.

## I. ADDED WORK LOSS BENEFITS

It is not disputed that plaintiffs paid an additional premium for added work loss benefits for the amount of $10,000, and that an "added work loss benefit" is a no-fault benefit.

Ohio maintains that plaintiffs' execution of the release against the Estate of John Samuel Collier, the tortfeasor, effectively bars its recovery of the $10,000 in added work loss benefits, and even if it did not, plaintiffs' recovery of the policy limits left the Collier Estate insolvent, and thus Ohio is precluded from any possible recovery through its right of subrogation under the terms of the policy and in accordance with Section 111(a)(2) of the No-fault Act, 40 P.S. §1009.111.

In the instant case, Ohio was obligated to pay basic loss benefits to plaintiffs. Heffner v. Allstate Insurance Company, 491 Pa. 447, 421 A. 2d 629 (1980). Section 301 of the No-fault Act abolishes the tortfeasor's tort liability for economic damages except for amounts in excess of money paid to the victim as basic loss benefits, 40 P.S. §1009.301. The victim may recover from the tortfeasor for amounts in excess of the basic loss benefits, and if the victim's no-fault insurance policy provides for "added work loss benefits" under Section 111(a)(2), the no-fault insurer will be subrogated to the victim's right to recover from the tortfeasor, but only for economic damages which exceed the "basic loss benefits" amount. Brunelli v. Farelly Bros., 266 Pa. Super. 23. 402 A. 2d 1058 (1979). In other words, the no-fault insurer must pay "basic loss benefits" to the victim, and added work loss benefits if specified in the contract of insurance, but may recover from the tortfeasor only for amounts paid to the victim in excess of basic loss benefits, supra. Thus, there is no question that Section 111(a)(2) of the No-fault Act permits a no-fault insurer the right of subrogation for added work loss benefits.

Ohio, as stated, contends that the release executed by plaintiffs cut off Ohio's right to proceed against the estate of the tortfeasor to recover added work loss benefits paid to plaintiffs under its right of

subrogation. The release contained the following language:

To me/us in hand paid by J. Samuel Collier and Thomas S. Collier, Jr., Adm. of the Estate of John Samuel Collier, & Fireman's Fund Insurance Companies, the receipt of which is hereby acknowledged. I/we, being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns, hereby and forever release, acquit and discharge the said J. Samuel Collier and Thomas Collier, Jr., Adm. of the Estate of John Samuel Collier, & Fireman's Fund Insurance Companies, and all other persons, firms and corporations, and their heirs, administrators, executors, successors nd assigns, from any and all action, claim and demands of whatsoever kind or nature on account of any and all known and unknown injuries, losses and damages by, me/us or my/our property sustained or received on or about the 30th day of July, 1978 through an automobile accident occurring on Route 40, Hopwood, Fayette Co., Penna., except my claim for no-fault benefits payable pursuant to the Pennsylvania 'No -Fault Insurance Act.'

The purpose of this language was to preserve any rights that the victim had under the No-fault Act. One such right was the victim's right to recover added work loss benefits subject to the requirement that when these benefits were received, Ohio may recover from the tortfeasor amounts paid to plaintiffs in excess of "basic loss benefits." The release does not protect the tortfeasor against any claim Ohio may have for the added work loss benefits paid.

The right to subrogation does not preclude the insured-victim from initiating an action to recover damages where the claim exceeds the basic work

loss benefits provided under the No-fault Act. A payment of the added work loss benefits to the victim is not contingent upon the no-fault insurer being able to recover from the tortfeasor under its right of subrogation. The court rejects Ohio's claim that plaintiffs' recovery of the full amount of insurance coverage of the tortfeasor left the Estate of Collier insolvent and therefore, since there is nothing which it could recover, it has the right of set-off in the amount of the added work loss benefits. The right of subrogation carries no guarantee of recovery. So long as the insured plaintiff-administrator, by his action, has not precluded Ohio's legal right to recover, there is no basis for set-off or credit for sums due insured for added work loss benefits.

## II. ATTORNEY'S FEES

Plaintiffs seek attorney's fees pursuant to Section 107(3) of the No-fault Act, 40 P.S. § 1009.107. This section contains the following language:

If, in any action, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

The test applied by the courts has been whether an insurance carrier had a reasonable basis for refusing to honor a claim. Platts v. Government Employees' Insurance Company, 301 Pa. Super. 379, 447 A. 2d 1017 (1982).

It is the court's opinion that plaintiffs are not entitled to attorney's fees because Ohio had a reasonable basis for refusing to honor the claim. Ohio initially refused plaintiffs' claim because the Heffner decision was on appeal. Additionally, the

Fayette County Court of Common Pleas had ruled in favor of Ohio's motion for summary judgment, and this decision was not reversed until January 1983. Based on the history of this case, the court cannot find a basis to justify an award of counsel fees.

### III. DAMAGES FOR DELAY PURSUANT TO PA.R.C.P. 238

The final issue this court must resolve is whether plaintiffs are entitled to an award of damages for delay at ten percent per annum under Pa. Rule of Civil Procedure 238, in addition to the 18 percent interest permitted by Section 106 of the No-fault Act, 42 P.S. §1009.106.

When no-fault benefits are not paid within 30 days after receipt of a reasonable proof of fact and amount of loss, 18 percent interest is owed on the payments regardless of "good faith" of the insurer or reasonable cause for the delay. Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A. 2d 419 (1981).

It is the court's opinion that Pa.R.C.P. 238 is not applicable to a no-fault claim. The No-fault Act provides an exclusive remedy for an insurer's failure to make timely payments, and that is the assessment of interest at the rate of 18 percent per annum.