Robert PURSELL, Jr.

v.

ALLSTATE INSURANCE COMPANY, et al.

Civ. A. No. 82–4851.

United States District Court,
E.D. Pennsylvania.

Sept. 12, 1983.

Roger J. Harrington, Philadelphia, Pa., for Pursell.

Gerard Bruderle, Philadelphia, Pa., for Continental Nat'l Assurance Co.

Robert Keller, Philadelphia, Pa., for Nationwide Mut.

Edward German, Philadelphia, Pa., for Allstate.

### MEMORANDUM

GILES, District Judge.

In this declaratory judgment action the principal factual issue is the residence of

the plaintiff at the time of an automobile accident by which he sustained serious injuries. The residence of the plaintiff is determinative of which of three defendant insurance carriers is obligated to pay plaintiff's No-Fault benefits. The applicable provision of the Pennsylvania No-Fault Motor Vehicle Insurance Act, Pa.Stat.Ann. tit. 40, § 1009.101 *et seq.* (Purdon's 1974), states: "An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere." § 1009.103. The claim against Allstate Insurance Company is premised on the assumption that plaintiff was a "resident" of his parents' household at the time of the accident. The claim against Nationwide Mutual Insurance Company is based on the assumption that he was residing with his grandmother at the time of the accident. The claim against National Fire Insurance Company is premised on the possibility that plaintiff had no "residence" with any specific household at the time of the accident. *See* Pa. Stat.Ann. tit. 40, § 1009.204(a)(3).

In order to determine plaintiff's residence for No-fault benefits, the court must examine the facts and circumstances surrounding his daily life prior to the accident. Having considered all the evidence adduced at a bench trial, and the arguments and briefs of the parties, the court finds that plaintiff resided with his parents at the time of the accident. The following constitutes the court's Findings of Fact and Conclusions of Law:

1. Robert Pursell, Jr. is an individual and citizen of the Commonwealth of Pennsylvania.

2. Allstate Insurance Company is a corporation organized under the laws of the State of Illinois and doing business in the Commonwealth of Pennsylvania.

3. Nationwide Mutual Insurance Company is an Ohio Corporation doing business in the Commonwealth of Pennsylvania.

4. National Fire Insurance Company, part of the Continental National Company Group of Insurance Companies, is an Illinois corporation doing business in the Commonwealth of Pennsylvania.

5. On or about May 20, 1982, the plaintiff was a passenger in a car driven by Gerald J. Ahern, who was a named insured under a policy of insurance issued by National Fire Insurance Company, in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act. Plaintiff suffered serious injuries in Ahern's car as a result of an accident in Sybertsville, Luzerne County, Pennsylvania. As a result, it was agreed that plaintiff was unable to testify on the subject of his residence.

6. In late November, 1981, while residing with his parents in Bensalem, Pennsylvania, a township close to the City of Philadelphia, plaintiff went to Sybertsville, Pennsylvania to live with his paternal grandmother, Margaret Pursell, and to look for work. Sybertsville is approximately 120 miles from Bensalem.

7. Upon moving to Sybertsville, plaintiff may have had intentions of changing his residence to his grandmother's home as is evidenced by, *inter alia,* a renewed driver's license reflecting the Sybertsville address. While living with his grandmother the only work he was able to find was assisting an uncle in the kitchen of a bar situated in the street level of the grandmother's property. On April 20, 1982, plaintiff obtained a steady job as a helper with Down River Forest Products.

8. I credit the uncontradicted testimony of Margaret Pursell that ten (10) days to three (3) weeks before the accident she told plaintiff's father that he would have to find another place for plaintiff to stay because he would come in at very late and unpredictable hours of the night and that she was sick from the worry of waiting up for him. In effect, she put plaintiff out at that time and her address ceased being, if it ever was, plaintiff's residence.

9. Plaintiff's father then arranged for plaintiff to use his trailer which was located approximately four to six miles from Sybertsville in Sugar Loaf Township. Plaintiff moved all his belongings from the grandmother's house to the trailer. The

trailer could have been used for living purposes year-round as it had facilities which could be adapted to meet basic shelter and living needs.

10. The trailer was used by the father on a regular basis for overnight accommodations when he made weekly visits to the Veteran's Administration Hospital in the Sybertsville area. He also used it during the hunting season. The trailer did not have a post office address or a telephone. However, it was located a short distance from a permanent dwelling. Those neighbors did have a telephone which was used by plaintiff to receive, and presumably make, calls. The father and son shared the trailer during the father's frequent visits.

11. Plaintiff would send laundry back to Bensalem with his father to be returned on his next visit. The bulk of his possessions remained at his parents' home in Bensalem where plaintiff still received mail.

12. Plaintiff's living in the trailer on a regular basis just prior to the accident as opposed to his grandmother's house is corroborated by the testimony of his girl friend, Karen Macuta. Plaintiff told her that he was from Philadelphia and lived in Philadelphia. Plaintiff did not have a car. When Ms. Macuta drove her car on their dates, she would drop plaintiff off either at the trailer or the uncle's bar.

13. Plaintiff's father assumed responsibility for locating suitable shelter for his son when the grandmother decided she would not have him live with her any longer. That assumption of responsibility demonstrated that plaintiff was still attached to the Bensalem family unit. Further, the placing of plaintiff in his trailer simply evidenced an extension of the Bensalem residence for purposes of the Pennsylvania No-Fault Act.

14. Plaintiff was not a vagrant, having no connection to a family unit. Not only did his parents consider him as residing with them, especially since the trailer shelter was their responsibility, but the grandmother also considered the parents, (at least her son, plaintiff's father), as being responsible for finding suitable housing for their son. Neither the parents nor the grandmother considered plaintiff to be a liberated and independent child.

15. The trailer was intended by plaintiff and his father as a suitable temporary housing. The move from the grandmother's house occurred in the early spring. Plaintiff was just starting a job with decent pay that promised to be steady. Therefore, it is reasonable to assume that before winter plaintiff would have been able to afford housing of his own or to remain at the father's trailer. However, as of May 20, 1982, plaintiff was not in a position to assert financial independence from his parents.

16. Therefore, the court finds by a preponderance of the evidence that plaintiff remained part of his parents' family unit and that he was not residing with his grandmother at the time of the accident.

17. Consequently, Allstate Insurance Company is solely liable for the payment of benefits to plaintiff.

18. Regardless of any good faith defense, defendant Allstate is required to pay eighteen percent (18%) interest per annum on all No-Fault benefits, including reasonable loss wage benefits, which were not paid within thirty (30) days after receipt by Allstate of reasonable proof of damages to plaintiff and the amount of loss sustained. Pa.Stat.Ann. tit. 40, § 1009.106(a)(2); *Motley v. State Farm Mut. Auto. Ins. Co.,* 303 Pa.Super. 120, 449 A.2d 607, 612 (1982). *Cf. Hayes v. Erie Ins. Exchange,* 493 Pa. 150, 425 A.2d 419 (1981) (plaintiff who had submitted all necessary proof of damages entitled to 18% interest on overdue payments). Plaintiff's letter to counsel for Allstate dated June 29, 1981, does not constitute sufficient proof of damages.

21. Interest to be paid, if any, shall accrue on the thirty-first (31st) day after plaintiff submitted or submits reasonable proof. *See Jones v. National Casualty Ins. Co.,* 20 D & C 3d 360, 367 (1981). *Cf. Marryshow v. Nationwide Mut. Ins. Co.,* 306 Pa.Super. 233, 452 A.2d 530, 532 (1982) (18% interest on work loss benefits effective

thirty days after verdict, the trial being first time claimant could be said to have submitted reasonable proof of loss).

22. Allstate is not liable for counsel fees since its defense to coverage was based on a reasonable foundation that either one of two other insurance carriers might be liable. *See* Pa.Stat.Ann. tit. 40, § 1009.107(3); *Hayes v. Erie Ins. Exchange,* 493 Pa. 150, 154, 425 A.2d 419, 421 (1981).

23. Allstate is liable to Nationwide for all payments made by Nationwide to plaintiff pending resolution of this declaratory judgment.