## Shank v. Federal Kemper Insurance Company

*John L. Sampson,* for plaintiff.
*J. Michael Flanagan,* for defendant.

ECKMAN, *J.,* June 12, 1984—Presently before the court is the motion of plaintiff, Marguerite C.

Shank, for summary judgment against defendant, Federal Kemper Insurance Company, and the cross-motion filed by defendant for summary judgment against plaintiff.

On November 9, 1983, plaintiff filed a complaint in assumpsit against defendant, her insurer, seeking to recover damages pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act[1] (hereafter "No-fault Act"). Defendant filed an answer and new matter on December 2, 1983. Plaintiff filed a reply on December 8, 1983. By stipulation of the parties, plaintiff filed an amended complaint on January 6, 1984, which required no response. Plaintiff filed the instant motion for summary judgment with an affidavit in support thereof on January 9, 1984. Defendant filed a cross-motion for summary judgment with an accompanying affidavit on January 19, 1984. Briefs having been submitted by the parties, the motion and cross-motion are ready for disposition.

The principles to be applied in ruling upon a motion for summary judgment are well settled. Summary judgment shall be rendered only ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa. R.C.P. 1035(b). Summary judgment should be granted only in the clearest of cases. Granthum v. Textile Machine Works, et al., 230 Pa. Super. 199, 326 A.2d 449 (1974). The court must view the evidence in the light most favorable to the non-moving party, and

---

1. Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, Art. I, §101; 40 Pa. C.S.A. §1009.101 et seq., Supplement.

any doubts must be resolved against the entry of judgment. Yaindl v. Ingersoll-Rand Company, Etc., 281 Pa. Super. 560, 422 A.2d 611 (1980).

For purposes of the motion and cross-motion, the record discloses that defendant issued to plaintiff an insurance policy on May 24, 1978 (Complaint, Paragraph 3). On January 10, 1983, plaintiff was involved in an automobile accident in East Lampeter Township, Lancaster County, Pa., in which she sustained injuries for which she was treated by James P. O'Neill, D.O. The insurance policy was in full force and effect on the date of the accident. At the time of the accident, plaintiff was employed as a school teacher by the Conestoga Valley School District at an annual salary of $24,685. All teachers of the school district receive an annual salary which is paid over a period of 12 months.

Plaintiff gave defendant notice on April 11, 1983 of a claim for benefits under the policy (Complaint, Paragraph 7). Defendant paid plaintiff work loss benefits of $246.50 a week from the date of her injury through the period ending May 27, 1983, the end of the school year. Plaintiff submitted a claim for work loss benefits from May 28, 1983 to July 1, 1983. On July 27, 1983, plaintiff mailed to defendant a copy of a letter from D. O'Neill dated July 23, 1983 and claimed work loss benefits up to September 6, 1983, the beginning of the new school year.

Plaintiff alleges in the complaint that defendant wrongfully terminated work loss benefits and that she is entitled to the benefits of $246.50 per week from May 28, 1983 through September 5, 1983, plus interest and attorney's fees. In her motion, she contends that there is no dispute that she was unable to work for the remainder of the school year and that she is entitled to work loss benefits after the close of the school year to compensate for loss of

income represented by the deferred income she would have earned over the summer months, but for the injuries sustained in the accident. Defendant contends that it paid plaintiff the maximum monthly work loss benefits permitted under the No-fault Act for the period when plaintiff would have been teaching school and earning income and defendant has no further liability to plaintiff under her insurance policy.

Section 103 of the No-fault Act[2] defines "work loss" as

"(A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205;

Section 205 of the No-fault[3] regarding work loss provides, in pertinent part:

(a) Regularly employed.—The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

. . .

(d) Definitions.—As used in this section:

'Probable annual income' means, absent a showing that it is or would be some other amount, the following:

(A) twelve times the monthly gross income earned by the victim from work in the month preceding the month in which the accident resulting in injury occurs, or the average annual income earned

---

2. Pennsylvania No-fault Motor Vehicle Insurance Act, supra; 40 Pa. C.S.A. §1009.103, Supplement.

3. Supra; 40 Pa. C.S.A. §1009.205, supplement.

by the victim from work during the years, not to exceed three, preceding the year in which the accident resulting in injury occurs, whichever is greater, for a victim regularly employed at the time of the accident;

Section 202 of the No-fault Act[4] provides, *inter alia:*

(b) Work loss limits.—Work loss, as defined in Section 103 shall be provided:

(1) up to a monthly maximum of:

(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capital income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; . . .

Section 103, *supra,* of the No-fault Act states:

'Loss of income' means gross income actually lost by a victim or that would have been lost but for any income continuation plan, reduced by:

(A) eighty per cent (80%) of any income which such individual earns from substitute work;

(b) income which such individual would have earned in available substitute work he was capable of performing but unreasonably failed to undertake; or

Finally, Section 106 of the No-fault Act[5] states, *inter alia:*

(a) In general.—

(1) No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss replacement services loss, or survivor's loss is sustained."

---

4. Supra; 40 Pa. C.S.A. § 1009.202, Supplement.
5. Supra; 40 Pa. C.S.A. § 1009.106, Supplement.

In Kamperis v. Nationwide Insurance Company, ____ Pa. ____ , 469 A.2d 1382, 1384 (1983), which involved a statute of limitations issue, the Pennsylvania Supreme Court rationalized that

". . . where the victim was gainfully employed but not self-employed prior to his death, the victim suffered the work loss on the date he could next have expected to receive his regular pay for work he would ordinarily have performed in due course, but for the accident.

". . . the Act clearly looks to a continuing series of losses with each failure of a victim to receive his or her normal financial remuneration for work the victim could have performed had the accident not rendered the victim unable to work. This is evident by review of the provision of §106(a)(1): 'No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs but as . . . work loss . . . is sustained.' 40 P.S. §1009.106(a)(1). Thus it is clear that work loss is sustained each time a victim suffers economic detriment, or, as in the case at bar, misses a paycheck he would ordinarily have earned, but for the injuries sustained in the accident."

The definition of loss in Section 103 does not state that such loss or "accrued economic detriment" cannot be deferred. Further, the Supreme Court in Kamperis does not indicate to the contrary, stating the victim suffers work loss on the date he could next have expected to earn his regular pay for work he would have performed, but for the accident.

Instantly, teachers employed by Conestoga Valley School District receive a salary which is paid on a twelve month basis. The income for which plaintiff seeks remuneration represents income that would have been paid to her during the summer months in the form of deferred compensation. This deferred compensation would have been earned by plaintiff

prior to the end of the school year, but for the injury sustained in the accident.

Under these unique circumstances and the rationale of Kamperis, supra, we believe that it is reasonable to conclude that plaintiff suffered work loss within the meaning of the No-fault Act when she failed to receive an expected payment for work she would ordinarily have performed, but for the accident, even though school was not in session during the period in question. Kamperis v. Nationwide Insurance Company, supra.

Defendant alleges, however, that plaintiff seeks work loss benefits for the period after May 28, 1983, but has not submitted a reasonable proof of loss for the period. Plaintiff contends that she did submit reasonable proof of loss to defendant by letter of plaintiff's counsel sent to defendant on July 1, 1983 and by Dr. O'Neill's letter of July 23, 1983 sent to defendant on July 27, 1983. As no benefits have been paid by defendant, plaintiff contends that the benefits are "overdue" within the meaning of Section 106(a)(2) of the No-fault Act.

Section 106(a)(2) provides in pertinent part that:

"No-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained. . . . Overdue payments bear interest at the rate of eighteen per cent (18%) per annum."

As to the meaning of "reasonable", under this section, our research has not disclosed any cases dealing with the definition under the No-fault Act. Black's Law Dictionary, (Fifth Edition, 1979, p. 1138), however, defines the term as "Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view." Mindful of this definition, and viewing the evidence in the light

most favorable to defendant, we conclude that, under the circumstances, plaintiff did submit to defendant reasonable proof of the fact and amount of loss as required under the No-fault Act, and is therefore entitled to interest at the rate of 18 percent per annum.

Finally, we consider plaintiff's claim for attorney's fees. Section 107 of the No-fault Act[6] states, *inter alia:*

"(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

In Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A.2d 419 (1981), the Pennsylvania Supreme Court affirmed the denial of attorney's fees to a no-fault claimant where there was no evidence of bad faith on the part of the insurer and the insurer's arguments as to their liability were reasonable.

Instantly, defendant's liability is based in large measure on the Pennsylvania Supreme Court's recent decision in Kamperis v. Nationwide Insurance Company, supra, decided after defendant's refusal of benefits to plaintiff. Under these circumstances, we conclude that defendant did not act in bad faith and had a reasonable foundation to deny Plaintiff's claim. Hayes v. Erie Insurance Exchange, supra. Therefore, plaintiff is not entitled to an award of attorney's fees under the No-fault Act.

Accordingly, we enter the following

6. Supra; 40 Pa. C.S.A. § 1009.107, Supplement.

## ORDER

And now, June 12, 1984, the motion for summary judgment filed by plaintiff, Marguerite C. Shank, against defendant, Federal Kemper Insurance Company, is granted as to the issue of work loss benefits and interest, and denied as to plaintiff's claim for attorney's fees. The cross-motion for summary judgment filed by defendant against plaintiff is dismissed.