**Wright v. Erie Insurance Exchange**

*Frank S. Poswistilo,* for plaintiff.
*Michael P. Shay,* for defendant.

GRIFO, J., July 9, 1984 — This non-jury case involves a claim for work loss benefits, interest and attorney's fees under a no-fault automobile insurance policy. The issue is whether or not impairment of future earning capacity constitutes work loss under the no-fault policy.

The case was submitted to the decision of the court, and from the evidence we make the following

## FINDINGS OF FACT

1. Plaintiff was an insured party under policy number A091701626, which was issued to him in compliance with the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq (hereinafter referred to as the Act) by defendant insurance company. The policy was in effect on the date of the accident and entitled plaintiff to benefits thereunder.

2. On June 11, 1979, plaintiff, a student at Notre Dame High School, was a passenger in a jeep which was involved in a one-car accident. He sustained a fracture and subluxation of the T-12 vertebrae, a fracture of the 12th rib, subluxation of the sterno-clavicular joint, loss of 33 percent of the liver, serious internal injuries and injuries to the head.

3. On June 27, 1979, after surgery and recuperation, he was discharged to bed rest at home. As a result of these injuries, he has had difficulty maintaining his usual weight, has suffered intermittently from pain and nausea, is unable to carry on repetitive or weight bearing activities above the shoulder level with his right arm, is unable to do any repetitive bending, reaching, twisting type activity with his back, and is unable to lift heavy weights.

4. Plaintiff was quite disabled for a year following the accident and was placed on homebound instruction twice during his sophomore year. However, he

did make application to attend the Eastern North-ampton County Vocational-Technical School, and indicated his desire to become trained in the field of carpentry.

5. Although plaintiff completed his sophomore year, he did poorly. During his junior year, he missed more than 50 days of school; and after starting his senior year in September 1981, quit because he had received so little credit for the school work he had done during the prior two years. He was not admitted to the Vocational-Technical School.

6. Plaintiff found work after leaving school at the William Penn Farm Market where his duties were to take fruit from the cooler and place them on shelves. He was only able to maintain this activity for five weeks, when back complaints caused him to terminate his employment.

7. In September of 1982, he worked for Don's Produce, a business owned by his brother. A special cart was made for him, and with his brother's assistance he was able to load shelves for several months. However, when his brother got too busy to assist him, it became necessary for him to quit. During this period of time, he lost 15 pounds. One year later, after regaining his strength, he went back to work again for Don's Produce for a period of four months. However, he was unable to keep up with the work due to his back, and quit before Christmas. He has not worked since that time.

8. As a result of this accident, plaintiff instituted the instant civil action against defendant insurance company to recover work loss benefits under the act.

9. At no time after defendant insurance company's receipt of plaintiff's claim for work loss benefits were these benefits paid to plaintiff up until the present time.

10. Plaintiff has had a longtime interest in carpentry and in building houses. He first discussed his interest in the carpentry program at the Vo-Tech School with his 9th grade counselor. A carpenter during the first year following completion of the Vo-tech program earns approximately five dollars per hour. The same non-union carpenter one year later will be earning ten dollars per hour, or $20,000 annually.

11. Plaintiff's vocational rehabilitation expert assessed his abilities following a battery of exams. Plaintiff has good dexterity, high interest in carpentry, and would have performed well in his field of interest. Given his present limited physical situation, the sedentary jobs he can now perform have reduced his potential income by approximately six to seven thousand dollars per year.

12. The insurance department of Pennsylvania has determined that the average annual gross income of a production worker in the private nonfarm economy in Pennsylvania is 52 x $278 for the calendar year ending December 31, 1979.

## DISCUSSION

Plaintiff is seeking compensation for actual work loss during the summers of 1979 through 1981, which amounts to $6,672.00, as calculated pursuant to section 205 of the Act, Marryshow v. Nationwide Mut. Ins. Co., 306 Pa. Super. 233, 452 A.2d 530 (1982), plus impairment of future earning capacity resulting from the physical injuries caused by the jeep accident. The Pennsylvania No-fault Act specifically provides for work loss benefits to be paid to victims who are not employed at the time of the accident and who have not been employed for the

three years preceding the accident. Section 205(c) of the Act provides:

"Not Employed. — The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by: (1) determining his probable weekly income by dividing his probable annual income by fifty-two; and (2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period."

"Probable annual income" is defined by section 205(d) of the Act which provides in pertinent part:

" 'Probable annual income' means, absent a showing that it is or *would be some other amount,* the following: — (c) the average annual gross income of a production or nonsupervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work." (emphasis added)

"The Legislature's express purpose in adopting the No-fault Act was to create a low cost, comprehensive, and fair system which would provide for maximum feasible restoration of all victims of motor vehicle accidents . . . Restoration includes assuring every victim . . . recovery of a reasonable amount of work loss . . . Since insurance statutes are not among those types of statutes designated by our Legislature as requiring strict construction, we are to construe them liberally in order to effect their purpose . . . Moreover, when construing statutes, we are to recognize that the Legislature does not intend a result that is absurd, impossible of execution or unreasonable. . ." Mattia v. Employers Mut.

Companies, 294 Pa. Super. 577, 440 A.2d 616, 618 (1982).

Defendant initially disclaims responsibility for work loss benefits because plaintiff has not provided proof of the date he would reasonably have expected to reenter the work force and earn a paycheck, but for the injuries sustained in the accident. However, this court finds that plaintiff submitted sufficient proof at trial to establish that he was seeking loss of earning capacity commencing from his expected graduation date in June 1982 into the future.

As to the issue which is the crux in the instant case, we have found no appellate decisions which specifically address the recovery of work loss benefits of a surviving victim who has not yet entered the work force and whose injuries are not so severe as to have totally destroyed his ability to work, but nevertheless have significantly impaired his future earning capacity and has presented competent evidence of such loss at trial.

In Anfuso v. Erie Ins. Group, 306 Pa. Super. 567, 452 A.2d 870 (1982), the court addressed an argument advanced against a nine year old's estate that had the victim survived and been permanently injured, she would not have been entitled to work loss benefits. The Superior Court concluded the victim would have been entitled to work loss benefits had she been permanently injured rather than killed.

Moreover, recent lower court decisions and commentary have suggested that courts are beginning to recognize impairment of earning capacity as a work loss benefit since it is a well recognized element of damage in a third party action and the Act mandates correlation of economic loss recovery between the no-fault and tort systems. Kroack v. Allstate Ins. Co., a/k/a Allstate Indemnity Co. (Mercer Co., No. 1092 C.D. 1981, Slip Op., 14, filed Oct.

12, 1983); D. Shraeger, The Pennsylvania No-fault Motor Vehicle Insurance Act, §1:8.2 at 32 (supp. 1983). Accordingly, we find that recognition of loss of future earning power as an element of no-fault recovery will ensure that the intended economic protection of the Act will be extended to living yet permanently injured accident victims.

This view is also consistent with the statutory language and purpose to provide "the maximum feasible restoration of all individuals injured . . . in motor vehicle accidents on Commonwealth highways." 40 P.S. §1009.102(a) (3). Plaintiff's impairment of earning capacity from June 1982 to May 1984 is $13,000, and his actual work loss amounts to $6,672. However, section 202(b) of the Act provides that work loss limits shall be up to a total amount of $15,000. Although plaintiff has suffered an economic loss in excess of that amount, he is only entitled to recover the maximum amount of $15,000 as provided for by the Act.

We also find that plaintiff is entitled to interest at 18 percent per annum on any overdue payments regardless of the reasonableness or good faith of defendant in withholding these work loss benefits. Hayes v. Erie Ins. Exchange, 493 Pa. 150, 425 A.2d 419, 421 (1981). However, plaintiff did not provide satisfactory proof of his work loss entitlement until the time of trial. Accordingly, 18 percent interest will be added to the $15,000 effective 30 days after the verdict. 40 P.S. §1009.106(a) (2).

Additionally, plaintiff seeks attorney's fees under §107(3) of the act. However, the Hayes case, supra, also holds that attorney's fees are only to be awarded in the event of bad faith on the part of the insurer. The court finds that defendant had a reasonable basis upon which to deny payment since the interpretation of the work loss provisions of the Act is an

evolving area of the law, and because the factual situation in this case is similar only by analogy to a few recently reported decisions and treatise treatment. Therefore, plaintiff is not entitled to recover attorney's fees from defendant.

## CONCLUSIONS OF LAW

1. Plaintiff has suffered actual work loss in the amount of $6,672.

2. Plaintiff would have realized probable income of a carpenter had he not been injured.

3. Plaintiff has suffered disabling permanent injuries which have shortened his economic horizon and resulted in a future loss of earning power of $6,500 per year.

Wherefore, we enter the following

## VERDICT

And now, this July 9, 1984, we find in favor of plaintiff and against defendant, and award plaintiff work loss benefits in the amount of $15,000, with interest at the rate of 18 percent per annum to be calculated 30 days after this date.

On the matter of attorney's fees claimed by plaintiff, we find for defendant.

If no exceptions are filed within ten days from the date of the verdict, the clerk of courts shall enter final judgment upon the verdict.