549 A.2d 927

**John LEE, Jr., Appellant,**

v.

**SAFEGUARD MUTUAL INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued June 8, 1988.

Filed Sept. 19, 1988.

Reargument Denied Nov. 7, 1988.

Allen L. Feingold, Philadelphia, for appellant.

Wayne A. Schieble, Philadelphia, for appellee.

Before McEWEN, OLSZEWSKI, and CERCONE, JJ.

OLSZEWSKI, Judge:

This case involves the question of a claimant's recovery for attorney fees under section 107 of the Pennsylvania No-fault Motor Vehicle Insurance Act ("No-fault Act").[1] Finding the record incomplete to support a claim for counsel fees under section 107(3) of the No-fault Act, the trial court denied appellant's claim. Appellant contends that the trial court erred in failing to award attorney's fees pursuant to sections 107(1) and 107(3) of the No-fault Act. We find the record lacks evidentiary support for recovery of attorney's fees under either section and, consequently, affirm the judgment.

On September 4, 1976, appellant was injured in an automobile accident. Appellant, at the time of the accident, was insured by appellee, Safeguard Mutual Insurance Company. On May 29, 1979, the insurance commissioner suspended appellee and, on April 21, 1982, the Commonwealth Court declared appellee insolvent. Subsequently, the Pennsylvania Insurance Guarantee Association ("PIGA") handled the file on behalf of appellee.

In 1978, appellant filed his first action for no-fault benefits in which he demanded judgment for itemized medical bills totalling $1,087.00, claiming that those bills were "incomplete and continuing," and demanded judgment for lost

---

1. Act of July 19, 1974, P.L. 489, No. 176, Sec. 101, *et seq.*, 40 P.S. Sec. 1009.101, *et seq.*, *repealed*, Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a), effective October 1, 1984. At the time of the auto accident in question, appellee's insurance claims were governed by the currently repealed No-fault Act.

wages "together with penalties, attorney's fees, interest and costs thereon." Appellant also sought punitive damages. In 1980, appellant filed another action for no-fault benefits arising out of the same car accident, adding a request for payment of uninsured motorist benefits for "pain and suffering."

On December 4, 1984, after PIGA assumed appellee's file, an arbitration panel, with respect to the 1978 action, found in favor of appellant in the amount of the itemized bills, namely $1,087.00. The panel also assessed interest at the rate of 18% per year, for a total award of $2,296.29. The panel rejected appellant's claim for lost wages, any additional medical bills, and attorney's fees. With respect to the 1980 action, an arbitration panel entered an award in favor of appellant in the amount of $1,722.50. Appellant and PIGA appealed the panel decisions resulting from the 1978 action and the 1980 action, respectively. Both appeals were consolidated for purposes of trial.

Prior to trial by jury, pursuant to a motion *in limine*, the trial court ruled that all claims for punitive damages and previously adjudicated uninsured motorist matters would be barred from the lawsuit.[2] The court also ruled that the claim for counsel fees would be severed and determined by the court after the jury decided the claim for the underlying no-fault benefits. At trial, PIGA's counsel made the following opening statement during which appellant's counsel at various points moved for a directed verdict:

> [PIGA's counsel]: Yes, your Honor. I simply mean to put before the jurors the matters which I do not dispute that [appellant] is entitled to....

*   *   *   *   *   *

When this accident occurred, they were notified by [appellant], and they received one bill from St. Joseph's Hospi-

2. On September 14, 1982, appellant filed a petition to compel uninsured motorist arbitration; and on February 5, 1985, an arbitration panel found in favor of appellant in the amount of $6,500.00. Judgment was entered on this award.

tal.... Saint Joe's Hospital, had a bill, for [appellant], in the amount of Seven Hundred Seventy–Nine Dollars net. We'll prove in this case by virtue of ... cancelled check that we received from the liquidator, in the Pennsylvania Insurance Commissioner's Department, that Safeguard paid that bill, June one, 1977....

... by a letter of [appellant's counsel's] dated August twenty-eighth, 1978, he sends them additional bills, I am going to itemize these bills here for you.

To Doctor Freedman, One Hundred Five Dollars. Doctor Anday, Seventy-five Dollars. Doctor Nelson, One Hundred Dollars. And Gemedco Supply, Twenty Five Dollars.

He also encloses in that letter and makes demand for payment to Saint Joseph's Hospital bill that that had been paid more than a year before.

So that you have the Saint Joe's Hospital bill ... that's been paid, he submits that again, and a total of Three Hundred Five Dollars more in medical bills.

Also, there's made a demand for wage payment, but as to the exact amount of the wage losses, any documentation to prove the wage losses, you'll see there is not anything submitted to Safeguard at all.

Under the law, it's true that when an attorney presents reasonable proof of an outstanding bill and documentation to support that there was a reasonable bill and it was for services actually rendered and bills outstanding, the insurance company has to generally pay within thirty days or at least come up for a reason not to dispute.

In this case, Safeguard is presented with a bill, one of which they find out has previously been paid by looking through their check file, and they are presented with literally no documentation for the rest.

Unfortunately, what happened, Safeguard went bankrupt, ... [s]o, between 1979 and 1982, nobody can make complaints against them, any lawsuits against them were suspended[.] ...

[Appellant's counsel] filed this first lawsuit ... in September of 1978. Since that time until this date, at least since the Insurance Guaranty Association got the files in L982 (sic), we have not contested that we'll pay this Three Hundred Five Dollar bill.

\* \* \* \* \* \*

[PIGA's Counsel]: As these are not in dispute, ladies and gentleman, when you go out, we ask you to award this three hundred five dollars to the claimant, because we have no disputes he is entitled to this.

[Appellant's counsel]: (INTERPOSING.) Your honor, I ask for a directed verdict for those amounts.

THE COURT: You will get it in time.

[Appellant's counsel]: Thank you.

[PIGA's counsel]: (CONTINUES TO ADDRESS JURY.) Unfortunately, you have got a lawsuit, however, by this time, there are additional claims made that we do dispute. We dispute the exact amount, and we are willing to pay reasonable wages for the two months, eight weeks or so—you will see that the plaintiff has indicated in statements to us, and handwritten and signed statements, that his wage loss is Two Hundred Dollars a week for that eight-week period, and sixteen hundred dollars wages. We don't dispute that.

[Appellant's counsel]: Your Honor, Also notation for directed verdict for the sixteen hundred dollars.

[PIGA's counsel]: So we are now and have been willing, the Guaranty Association, since we got these files, I guess in '82 or '83, to pay that wage, despite the lack of documentation at this point—we don't even care—to pay these bills. We are here not to waste your time, the court's—not to waste the court's time, but to get this matter over with.

\* \* \* \* \* \*

You will find the Guaranty Association, myself, Mr. Perkins has done everything they can to move this case, and I will ask you to find in favor of the Plaintiff in the amount of Nineteen Hundred Five Dollars. Thank you.

[Appellant's counsel]: I ask for a directed verdict of Nineteen Hundred and Five Dollars, and I rest my case. Thank you.

Transcript at 59–68.

Subsequently, the trial court directed the jury to return a verdict in the amount of nineteen hundred dollars. After the jury was discharged, the trial court considered appellant's claim for counsel fees. During the proceedings, appellant's counsel reviewed his files, identifying the nature of the pleading or correspondence, and stated the time expended on each item as he identified it. He also informed the trial court of his hourly charge for professional services. Throughout his review, appellant's counsel intermittently made assertions of proper notification of the insured, submission of documentation, and the lack of response on part of the insured. After submission of briefs, the lower court denied the claim. Appellant subsequently filed post-trial motions alleging that the trial court "erred when it failed to award plaintiff counsel fees under 40 P.S. Sec. 1009.107(1) [and 40 P.S. § 1009.107(3) ]." Appellant's motion for post-trial relief at 1–2. The trial court denied the motion noting that:

> [T]he record developed at trial and presently before this Court is silent as to many—if not most—of the factual assertions and contentions set forth in plaintiff's Brief and Memorandum of Law. Accordingly, such matters are not properly before the Court and the assertions with respect thereto must be disregarded.

Trial court order dated December 30, 1987 at 1. On January 28, 1988, the trial court order and judgment were entered. This timely appeal followed.

Appellant contends that the trial court erred in denying appellant's request for counsel fees [3] when appellee admit-

---

**3.** In his statement of the question and summary of argument, appellant asserts that he is also seeking "interest." Perusal of the record indicates that a claim for interest was not raised in post-trial motions and, therefore, cannot be raised for the first time in this forum. Pa.R.C.P. 227.1. Consequently, any claim for interest is deemed waived.

tedly failed to make timely payments of personal injury protection benefits under the No-fault Act. Specifically, appellant argues that the trial court erred in failing to make the distinction between sections 107(1) and 107(3). Appellant contends that, unlike section 107(3), recovery of counsel fees under section 107(1) does not require proof of bad faith on part of the no-fault carrier. In the alternative, appellant maintains that he is entitled to counsel fees under 107(3), stating:

> [D]efendant's actions totally violated the No–Fault Law when they did not pay within 31 days and gave no reason, in writing or otherwise, as required by law, for their

In regard to costs, appellant contends:

The No–Fault law requires that the plaintiff be put back into the best possible situation with the payment of all losses, 18% interest, attorney's fees and *costs,* as outlined in the various sections of the No–Fault law. This includes record costs, which are usually recovered by the winner of a claim, as well as costs of depositions and other out-of-pocket expenses necessitated by the defendant's actions. Appellant's brief at 16 (emphasis added).

Our review of the No-fault Act indicates that the legislature has not provided for the recovery of costs as outlined by appellant and for the purposes set forth by appellant. We, therefore, find that the trial court did not abuse its discretion in failing to award costs. *See In Re Scott Township, Allegheny County,* 186 Pa.Super. 167, 142 A.2d 357 (1958) ("The power to impose costs in a proceeding based on a statute must be found in the statute."). We, however, note that there are two particular contexts where the legislature has provided recovery of costs, in addition to attorney fees. One situation is where a trial court enters an order "specifying conditions of discovery, and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires." 40 P.S. § 1009.408(d). Costs are also recoverable where a claim is "discharged by a settlement to the extent authorized by law and upon a finding, by a court of competent jurisdiction, that the settlement is in the best interest of the claimant and any beneficiaries of the settlement, and that the claimant understands and consents to such settlement. . . ." 40 P.S. § 1009.106(b)(1). These costs are "the costs of such proceeding including a reasonable attorney's fee (based upon actual time expended) to the attorney selected by or appointed for the claimant." 40 P.S. § 1009.106(b)(1).

failure to pay. That in itself, was bad faith and required the payment of attorney's fees and costs.

Appellant's brief at 24.

Appellee argues that "without offering any of (sic) evidence to support an allegation of bad faith on part of defendant, the plaintiff cannot succeed in his claim for attorney fees." Appellant's brief at 9. Appellee makes no reference to section 107(1).

In construing the No-fault Act, we are guided by the following principle of statutory construction: "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). We also recognize that we are, "if possible, to give effect to all [a statute's] provisions," and "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(a) and (b). With these principles in mind, we first turn to the legislature's findings and purposes in enacting the No-fault Act. The legislature found that:

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

* * * * * *

(5) exhaustive studies by the United States Department of Transportation, the Congress of the United States and the General Assembly have determined that the present basic system of motor vehicle accident and insurance law, which makes compensation and restoration contingent upon:

(A) every victim first showing that someone else was at fault;

(B) every victim first showing that he was without fault;

(C) the person at fault having sufficient liability insurance and other available financial resources to pay for all the losses.

is not such a low-cost, comprehensive, and fair system;

\* \* \* \* \* \*

(6) careful studies, intensive hearings, and some State experiments have demonstrated that a basic system of motor vehicle accident and insurance law which:

(A) assures every victim payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss; and

(B) eliminates the need to determine fault except when a victim is very seriously injured,

is such a low-cost, comprehensive, and fair system;

\* \* \* \* \* \*

(9) a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims can save and restore the lives of countless victims by providing and paying the cost of services so that every victim has the opportunity to:

(A) receive prompt and comprehensive professional treatment; and

(B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen.

40 P.S. § 1009.102(a).

In addition, the legislature stated its purposes as follows:

(b) Purposes.—Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of *prompt and adequate basic loss benefits* for motor vehicle accident victims and the survivors of deceased victims.

40 P.S. § 1009.102(b) (emphasis added).

In order to accomplish these objectives, the legislature has enacted a comprehensive statute which includes penal-

ties for non-payment of legitimate claims or untimeliness in reacting to the presentation of claims. These penalties include the imposition of interest[4] and an award of attorney's fees in specified circumstances. Circumstances where attorney's fees are recoverable by a claimant are set forth in specific, detailed language in sections 107(1) and 107(3) of the Act, respectively:

(1) If any overdue no-fault benefits are paid by the obligor[5] after receipt by the obligor of notice of representation of a claimant in connection with a claim or action for the payment of no-fault benefits, a reasonable attorney's fee (based on actual time expended) shall be paid by the obligor to such attorney. No part of the attorney's fee for representing the claimant in connection with such claim or action for no-fault benefits shall be charged or deducted from benefits otherwise due to such claimant and no part of such benefits may be applied to such fee.

\* \* \* \* \* \*

(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

40 P.S. § 1009.107(1) and (3).

To ensure "a Statewide system of prompt ... basic loss benefits for motor vehicle victims and the survivors of deceased victims,"[6] an insurer "shall" pay attorney's fees "if any overdue no-fault benefits are paid by the [insurer] after receipt by the [insurer] of notice of representation of a

---

4. Section 1009.106(a)(2) provides in pertinent part: "Overdue payments to bear interest at the rate of eighteen percent (18%) per annum."

5. " 'Obligor' means an insurer, self-insurer, or obligated government providing no-fault benefits in accordance with [the No-fault Act]." 40 P.S. § 1009.103. "Insurer," "self-insurer," and "government" are further defined in the No-fault Act. *See* 40 P.S. § 1009.103. For purposes of discussion, we shall use the terms "insurer" or "no-fault carrier."

6. 40 P.S. § 1009.102(b).

claimant." 40 P.S. § 1009.107(1). Pursuant to section 106(a)(2) of the No-fault Act,

> [n]o-fault benefits are overdue if not paid within thirty days after the receipt by the [insurer] of each submission of reasonable proof of the fact and amount of loss sustained, unless the [insurer] designates, upon receipt of an initial claim for for no-fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within fifteen days after the close of each such period. If reasonable proof is supplied as to only part of a claim, but the part amounts to one hundred dollars ($100) or more, benefits for such part are overdue if not paid within the time mandated by this paragraph. An obligation for basic loss benefits for an item of allowable expense may be discharged by the [insurer] by reimbursing the victim or by making direct payment to the supplier or provider of products, services, or accommodations within the time mandated by this paragraph. Overdue payments bear interest at the rate of eighteen per cent (18%) per annum.

40 P.S. § 1009.106(a)(2)

We note, however, that the legislature, by enacting the No-fault Act, intended to establish a "fair" system. Thus, it acknowledged the possibility of the presentation of fraudulent claims, and provided for the right of the no-fault carrier to contest the claim in a timely manner under section 106(a)(5).[7] Section 106(a)(5) states in pertinent part:

---

**7.** This is further evidenced by section 107(2) whereby the legislature provides for the recovery of counsel fees by the insurer. Section 107(2) states:

> (2) if, in any action by a claimant to recover no-fault benefits from an [insurer], the court determines that the claim or any significant part thereof is fraudulent or so excessive as to have no reasonable foundation, the court may award the [insurer's] attorney a reasonable fee based upon actual time expended. The court in such case, may direct that the fee shall be paid by the claimant or that the fee may be treated in whole or in part as an offset against any benefits due or to become due to the claimant.

40 P.S. § 1009.107(2).

An [insurer] who rejects a claim for basic loss benefits shall give to the claimant written notice of the rejection promptly, but in no event more than thirty days after the receipt of reasonable proof of the loss. Such notice shall specify the reason for such rejection and inform the claimant of the terms and conditions of his right to obtain an attorney.

*Id.*, § 1009.106(a)(5).

Thus, through its enactment of section 107(1), the legislature has provided mechanisms to ensure a fair system whereby promptness is encouraged and tardiness penalized. When a claimant is not timely notified or has not been timely paid and the claimant must enlist the services of an attorney to secure no-fault benefits owned to him by the insurer, the legislature provides for recovery of counsel fees by the claimant.[8] Consistent with establishing a "fair"

**8.** Appellee contends that:

> Justice Larsen, speaking for the Pennsylvania Supreme Court in the seminal case of *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981), recognized that the *sole consequence* of an overdue first-party benefit payment under § 106 of the No–Fault Act [sic] is a penalty of 18% interest, nothing more.

> Appellee's brief at 10.

Appellee's interpretation of *Hayes* is misplaced. In *Hayes,* a claimant filed an action against the insurer for non-payment of no-fault benefits. The trial court granted recovery of the personal injury protection benefits; however, the lower court refused to grant an award of counsel fees. The insurer promptly paid the benefits due with interest at 6%. The claimant, however, insisted that she was entitled to interest at 18% pursuant to § 106(a)(1) and brought an action for recovery of interest and attorney's fees. The trial court held for the insurer, and this Court affirmed, "reasoning that [the insurer's] good faith and reasonable cause for its initial denial of [the claimant's] claim excused it from 18% interest payment as well as from the claim for attorney's fees." *Hayes v. Erie Insurance Exchange, id.,* 493 Pa. at 153, 425 A.2d at 420. Our Supreme Court reversed, holding that "where a payment is overdue as defined by § 106, 18% interest is owed on that payment regardless of the 'good faith' of the insurer or the 'reasonable cause' of the delay." *Id.* Our Supreme Court stated:

> [The insurer] argues that, as a 'good faith/reasonable foundation' may be successfully asserted to a claim for attorney's fees, under § 107(3), this indicates the legislature similarly could not have intended to 'penalize' insurance carriers by imposing 18% interest on overdue payments wherein the delay was in 'good faith and with reasonable foundation.' However, exactly the converse is true—the

system and "assur[ing] every victim payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss," the legislature has also provided recovery of attorney fees where the insurer has acted unreasonably in denying a claim. Section 107(3) provides for the recovery of attorney fees by the claimant where the insurer, although providing timely notification of its denial of payment, denies the claim on an unreasonable basis. Pennsylvania appellate courts have construed section 107(3) "to allow an award of counsel fees only upon proof of bad faith on the part of an insurer in denying the claim. *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 160, 425 A.2d 419, 424 (1981); *Hall v. Midland Insurance Co.*, 320 Pa.Super. 281, 288–289, 467 A.2d 324, 328 (1983); *Shomper v. Aetna Life and Casualty Co.*, 309 Pa.Super. 97, 100, 454 A.2d 1101, 1102 (1982); *Baker v. Aetna Casualty and Surety*

quite clear negative implication of the appearance of a 'good faith/reasonable foundation' exception in § 107 coupled with its absence in the prior section, § 106, raises precisely the opposite inference. The legislature intended to create the exception to a claim for attorney's fees—they so indicated in § 107(3). The legislature did not intend to create the exception to a claim for 18% interest on overdue payments—they so indicated in § 106.

*Hayes, id.*, 493 Pa. at 154–55, 425 A.2d at 421 (footnote omitted). Thus, contrary to appellee's contention, our Supreme Court, in *Hayes*, did not address the issue of what penalties could be imposed on the insurer for overdue payments, but rather whether the insurer could rely on a "good faith/reasonable basis" exception to avoid payment of overdue benefits at 18% interest. Appellee's interpretation is also inconsistent with principles of statutory construction. If we were to agree that the sole consequence of an overdue no-fault benefit is interest at 18%, we would be ignoring the express terms of section 107(1) and treating the section as mere surplusage. A construction which fails to give effect to all provisions of a statute must be avoided. 1 Pa.C.S.A. § 1921; *Wilson v. Central Penn Industries*, 306 Pa.Super. 146, 149, 452 A.2d 257, 259 (1982). As stated earlier, section 107(1) evidences a clear policy of entitling a claimant to counsel fees when an insurer reacts untimely in presentation claims. No where in the No-fault Act does the legislature specifically limit the claimant to recovery of interest. Rather, it seeks to ensure award of attorney's fees by specifically providing that "[n]o part of the attorney's fees for representing the claimant in connection with such claim or action for no-fault benefits shall be charged or deducted from benefits otherwise due to such claimant and no part or such benefits may be applied to such fee." 40 P.S. § 1009.107(1).

*Co.*, 309 Pa.Super. 81, 92–93, 454 A.2d 1092, 1098 (1982), *overruled on other grounds, Atanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd,* [507] Pa. [68], 488 A.2d 571 (1985)." *Fasciana v. Aetna Life and Casualty Co.*, 343 Pa.Super. 1, [5], 493 A.2d 772, 774 (1985); *see also Romanski v. Prudential Property and Casualty Insurance Co.*, 356 Pa.Super. 243, 514 A.2d 592 (1986)." [9]

Having ascertained the legislative intent in enacting sections 107(1) and (3), we now turn to the instant case. In reviewing this case,

we must be mindful that findings of a trial judge in a non-jury case must be accorded the same weight and effect on appeal as the verdict of a jury, and will not be reversed in the absence of an abuse of discretion or a finding of a lack of evidentiary support. *Firestone v. Luther Ford Sales, Inc.*, 271 Pa.Superior Ct. 480, 414 A.2d 355 (1979). The appellate court, in these circumstances, is limited to determinations of whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. *Metz Contracting, Inc. v. Boxer Heights, Inc.*, 261 Pa.Superior Ct. 177, 395 A.2d 1373 (1978). It is also clear that in reviewing the findings of the trial judge, the victorious party is entitled to have the evidence viewed in the light most favorable to the successful party must be taken as true and all unfavorable inferences rejected. *Courts v. Campbell*, 245 Pa.Superior Ct. 326, 369 A.2d 425 (1976); *Colish v. Goldstein*, 196 Pa.Superior Ct. 188, 173 A.2d 749 (1961). This is especially true where the credibility of witnesses had to be weighed by the lower court. *Brent-*

**9.** We note that, unlike section 107(3), section 107(1) does not require the insurer's actions to be "without reasonable foundation" or in "bad faith." That is, whether the insurer's untimeliness in reacting to the presentation of a claim was "without reasonable foundation" or in "bad faith" is irrelevant. The phrase "without reasonable foundation" or its equivalent is excluded from section 107(1). "Where the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded." *Patton v. Republic Steel Corp.*, 342 Pa.Super. 101, [109], 492 A.2d 411, 415 (1985).

*water Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977).

*Brenna v. Nationwide Insurance Co.*, 294 Pa.Super. 564, 567–68, 440 A.2d 609, 611 (1982). In denying an award of attorney's fees, the trial court relied on section 107(3) and found that "on the present record of this case there is not a scintilla of evidence that the denial of payment was in bad faith." Trial court's memorandum at 12. The trial court did not consider section 107(1). Regardless of whether section 107(1) or section 107(3) is applicable, we find that appellant failed to meet its burden of proof to establish a prima facie case for attorney's fees under either section.[10]

To recover attorney's fees pursuant to section 107(1), appellant must prove:

(1) On a particular date, appellant provided reasonable proof of the fact of loss and amount of loss incurred;[11]

(2) Appellant was not paid no-fault benefits by appellee prior to the filing of a notice of representation by appellant's counsel;

(3) A notice of representation was filed when payments were overdue pursuant to section 106; and

(4) Appellee did not notify appellant within thirty days "after the receipt of reasonable proof of loss" of any denial of benefits.

In reviewing the record before us, we find that appellant failed to prove that reasonable proof was submitted to appellee.[12] Appellant asserts:

**10.** As in other civil actions, we hold that the plaintiff is required to prove facts essential to his right of recovery. *See Benjamin v. Allstate Insurance Company*, 354 Pa.Super. 269, 511 A.2d 866 (1986).

**11.** The Insurance Department's regulations provide in pertinent part: Proof of claim shall be made upon forms furnished by the Company unless the Company fails to supply such forms within 15 days after receiving notice of claim.
31 Pa.Code § 66.102(e) (example of basic loss benefits endorsement).

**12.** Finding that appellant has not proven that reasonable proof was submitted to appellee, we, consequently, cannot determine from the record whether appellant timely notified appellee nor can we determine whether appellant timely filed a notice of representation.

[Appellant], through his attorney, and/or the health care providers, submitted bills and reports to [appellee] by certified mail, return receipt requested and within thirty-one (31) days, [appellee] neither paid these no-fault obligations, nor did they give any reason for their failure to pay, either in writing or any other way.

Appellant's brief at 4. Perusal of the record, however, indicates that no bills, no reports,[13] no certified return receipt cards were introduced into evidence to demonstrate that appellee received reasonable proof of loss on a particular date. Appellant cannot rely on opposing counsel's remarks during his opening statement to excuse appellant from proving each element of his cause of action. It is well established that counsel, acting within the scope of his authority, may bind his client by an admission made during the course of a trial. *Piper Aircraft Corporation v. Workmen's Compensation Board,* 86 Pa.Cmwlth. 614, 485 A.2d 906 (1985); *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973). Constituting a judicial admission, the attorney's statement is "competent as evidence in the same case or in another case: (sic) *Associates Discount Corp. v. Kelly,* 169 Pa.Super. 74, 77, 82 A.2d 689, [690] (1951)." *Rizzo v. Rolarback,* 8 D.C.3d 122 (1978) *aff'd mem.,* 261 Pa.Super. 455, 395 A.2d 995 (1978) (footnote omitted.) PIGA's counsel, however, did not admit that appellee received reasonable proof of the fact of loss and amount of loss incurred. During opening statement, PIGA's counsel

---

**13.** "Items ordinarily used to prove economic loss or 'special damages' in personal injury cases should suffice as 'reasonable proof of the fact and amount of loss sustained' for the purpose of obtaining no-fault benefits. Counsel for no-fault claimants should submit, for example, medical reports and bills to prove medical expenses, income tax returns and a statement from the employer to prove work loss, and bills and receipts to prove survivor's loss, replacement services loss, or funeral expenses. D. Shrager, ed. *The Pennsylvania No-fault Motor Vehicle Insurance Act,* Sec. 1:22 (1979). While such documents are necessary, the mere fact that they were submitted does not alone establish 'reasonable proof of the fact and amount of the loss.' The court must make a case-by-case determination of whether there is 'reasonable proof' based on the the particular facts of each case." *Ralph v. Ohio Casualty Insurance Company,* 363 Pa.Super. 286, 297, 525 A.2d 1234, 1240 (1987).

did not dispute specific claims, but, with regard to those particular claims, PIGA's counsel asserted that the St. Joseph bill had already been paid "and [appellee was] presented with literally no documentation for the rest." Transcript at 66. At another point in his opening statement, PIGA's counsel states that "despite the lack of documentation at this point—we don't care—to pay these bills. We are here not to waste your time, the Court's—not to waste the court's time, but to get this matter over with." Transcript at 69. These remarks by opposing counsel do not admit receipt of reasonable proof.[14]

Assuming 107(3) is applicable, we accept the trial court's analysis that appellant has failed to prove that appellee acted in bad faith in denying any claims:

On the present record of this case there is not a scintilla of evidence that the denial of payment was in bad faith, without reasonable foundation or frivolous. The entire record is limited to the admissions and volunteered statements of the defendant's attorney soliciting the Jury "not to waste your time and the court's time over a nineteen hundred-dollar claim["], the swiftly voiced Motion of claimant to enter "a directed verdict of Nineteen Hundred and Five Dollars, and I rest my case" followed only by the recital of the claimant's review of the documents in his file from which a time calculation of the hours of this professional service was constructed. This will not support an award of counsel fees under the Act. There is not a shred of evidence on the record of this case to

14. At the appellate level, appellee attempted to introduce evidence of reasonable proof and proper notification by filing a petition for leave to file record. This Court denied the petition for leave to file record by order dated June 27, 1988, and also denied appellant's reconsideration of petition by order dated July 15, 1988. As an appellate court, we cannot usurp the function of the trial court as a factfinder. In addition, we find it inappropriate to make evidentiary rulings regarding the admissibility of evidence that should have been introduced at trial. Appellant argues, however, that the purpose of appellant's petition is to "contradict the false and fraudulent statements made by the appellee's counsel [during oral argument]." Appellant's reconsideration of petition for leave to file record at 3. These allegations can be properly addressed by the disciplinary board.

support a finding of bad faith, the absence of reasonable foundation or frivolity of action upon which entitlement to counsel fee can be based. The assertions in the claimant's Memorandum of proper notification of claim to the insurer, prompt submission of reports and bills and like claims have no support or factual basis on the record before the Court. The admissions of defense counsel that they would not contest entitlement despite late notice or lack of documentation cannot by any stretch of language be viewed as admissions of bad faith. Nor can the recital of time expended by counsel in the "paper war" which has been engaged in be construed as demonstration "bad faith" on the part of defendant anymore than can such appellation be attached to the plaintiff, based on the same serious of legal thrusts and counter-thrusts.

Opinion at 12–13.

The judgment of the trial court is affirmed.