603 A.2d 595

John G. FREEZE, Jr., Administrator of the Estate
of John Goss Freeze, Deceased, Appellant,

v.

DONEGAL MUTUAL INSURANCE COMPANY.

John G. FREEZE, Jr., Administrator of the
Estate of John Goss Freeze, Deceased,

v.

DONEGAL MUTUAL INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed Feb. 18, 1992.

306

Pamela G. Shuman, Harrisburg, for appellant (at 699) and appellee (at 727).

Robert E. Kelly, Jr., Harrisburg, for appellant (at 727) and appellee (at 699).

Before WIEAND, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

Before us is a dispute emanating out of the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act), 40 P.S. §§ 1009.101–.701 (repealed 1984). Specifically, this is a consolidated appeal from an order awarding $8,850.00 in attorneys' fees to appellant's counsel for recovering interest due on work loss benefits. Appellant has appealed this award and asks that we determine: (1) whether the trial court erred in failing to award counsel fees for the entire fourteen year period of representation; (2) whether the trial court erred in its interpretation of the No-fault Act; and, (3) whether the trial court erred in calculating a reasonable rate of compensation for counsel. Appellee has also appealed from the award of attorneys' fees arguing that: (1) appellant is not entitled to an award of attorneys' fees; and, (2) that this court does not have jurisdiction to hear appellant's appeal with regard to section 1009.107(3) of the No-

fault Act. We affirm the award of counsel fees, but on a different basis than that relied on by the trial court.

The relevant facts of this never-ending dispute are as follows. On January 14, 1977, John G. Freeze, III, an eleven year old child, was killed by an automobile while sled riding near his home. At the time of his death, the decedent was insured under a no-fault automobile insurance policy issued by appellee, Donegal Mutual Insurance Company (Donegal).

Following the death of his son, John G. Freeze, Jr., the nominal appellant, was appointed administrator of his son's estate. In his capacity as administrator, appellant submitted an application for payment of no-fault benefits to Donegal. Subsequent to receipt of appellant's application, Donegal was contacted by appellant's counsel, Angino & Rovner (Angino), who requested that payment of postmortem work loss benefits be made to decedent's estate. Five days later, Donegal denied the claim for work loss benefits.

Appellant then brought suit seeking to recover work loss benefits for the minor-decedent's estate. Donegal filed preliminary objections in the nature of a demurrer asserting that under the No-fault Act, the estate of a minor who has never entered the work force is not entitled to work loss benefits. The York County Court of Common Pleas agreed and sustained the demurrer. Appellant then took an appeal to this court, wherein we reversed the trial court's decision and held that the estate of a never-employed minor is entitled to work loss benefits under the No-fault Act.[1] Our decision was later affirmed by the Pennsylvania Supreme Court.[2]

Following the Supreme Court's decision, Donegal forwarded a check to Angino in the sum of $27,600.00. This amount represented $15,000 in work loss benefits plus interest of $12,600 calculated at the statutory rate of eighteen percent. See 40 P.S. § 1009.106(a)(2). Appellant re-

1. *Freeze v. Donegal Mut. Ins. Co.*, 301 Pa.Super. 344, 447 A.2d 999 (1982).

2. *Freeze v. Donegal Mut. Ins. Co.*, 504 Pa. 218, 470 A.2d 958 (1983).

turned this check to Donegal contending that it was entitled to stacked work loss benefits of $30,000 plus interest from the date of the initial application for benefits. On these issues, the parties remained deadlocked.

Eventually, appellant abandoned its claim for stacked benefits in light of our Supreme Court's decision in *Antanovich v. Allstate Ins. Co.*, 507 Pa. 68, 488 A.2d 571 (1985). Now, it would appear that the only issue remaining for resolution is the proper calculation of interest. However, this was not to be.

On June 8, 1987, appellant filed a motion for summary judgement requesting interest calculated from February 23, 1977, plus attorneys' fees pursuant to 40 P.S. § 1009.107(1) and (3). By its order of April 29, 1988, the trial court granted the motion and ordered Donegal to pay appellant the $15,000 basic work loss benefit plus interest calculated from June of 1977. The order also required Donegal to pay Angino reasonable attorneys' fees and expenses pursuant to Section 1009.107(1), but "only as they relate to the particular sum awarded." (T.C.O. at 5).[3] If the parties were unable to agree as to the amount of fees and expenses, the order stated that the trial court would hold a hearing and determine the amount of fees to be paid.[4]

In compliance with the above order, Donegal tendered a check to appellant in the amount of $44,475 representing payment of the work loss benefit plus interest, but not appellant's attorneys' fees.[5] Appellant accepted this sum and executed a release with Donegal.

Predictably, Donegal and Angino were unable to come to terms and the trial court scheduled a hearing to put the attorneys' fee issue to rest. Prior to the hearing, Angino filed an affidavit with the trial court detailing the creden-

3. T.C.O. denotes Trial Court Opinion of April 29, 1988.

4. Donegal took an appeal from this order which we quashed as an impermissible appeal from an interlocutory order. *Freeze v. Donegal Mut. Ins. Co.*, 366 Harrisburg 1988 (June 8, 1988).

5. Angino has retained forty percent of this sum pursuant to a contingency fee agreement it entered into with appellant.

tials of Attorney Angino, the hours spent resolving the instant dispute and requesting attorneys' fees in the amount of $348,152. A hearing was then held before the Honorable Joseph E. Erb.

Following the hearing, Judge Erb entered an opinion and order awarding $8,850.00 to Angino as a reasonable fee for resolving the dispute over the amount of interest owed to appellant. In making this award, the trial court determined that Angino had spent forty-four and a quarter hours resolving this issue and that it was entitled to a reasonable fee calculated at the rate of $200 per hour. Dissatisfied with this determination, both parties have taken timely appeals.

Before enacting the No-fault Act, our General Assembly studied the then existing motor vehicle accident insurance system and found:

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents ... is essential to the humane and purposeful functioning of commerce;

(4) to avoid any undue burden on commerce ..., it is necessary and proper to have a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims;

(5) ... the present [fault based] system of motor vehicle accident and insurance law ... is not such a low-cost, comprehensive, and fair system;

(6) careful studies, intensive hearings, and some State experiments have demonstrated a basic system of motor vehicle accident and insurance law which ... eliminates the need to determine fault ..., is such a low-cost, comprehensive system.

40 P.S. § 1009.102(a). Prompted by these findings, the General Assembly enacted a comprehensive scheme of no-fault motor vehicle insurance with the stated purpose of establishing "at [a] reasonable cost to the purchaser of

insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b).

Considering the extensive findings and the sound purpose to be attained, it is evident that recovery under the No-fault Act is to be had without turning to the judicial process, including retention of counsel. *See* 31 Pa.Code § 66.121.[6] To ensure the prompt and adequate compensation of accident victims, the No-fault Act contains penal provisions which punish an insurance carrier who either delays paying no-fault benefits due or unreasonably denies a legitimate claim. 40 P.S. § 1009.107(1), (3).

Specifically, section 1009.107(1) provides that:

[i]f any overdue no-fault benefits are paid by the obligor after receipt by the obligor of notice of representation of a claimant in connection with a claim or action for the payment of no-fault benefits, a reasonable attorney's fee (based on actual time expended) shall be paid by the obligor to such attorney. No part of the attorney's fee for representing the claimant in connection with such claim or action for no-fault benefits shall be charged or deducted from benefits otherwise due to such claimant and no part of such benefits may be applied to such fee.

And, section 1009.107(3) provides that:

[i]f, in any action by a claimant to recover no-fault benefits from the obligor, the court determines that the obli-

---

6. Following adoption of the No-fault Act, the Insurance Department promulgated procedures governing the transition from the existing fault-based insurance system to no-fault. As part of this procedure, motor vehicle insurers were required to submit to their insureds an explanatory letter containing a brief description of the No-fault Act. 31 Pa.Code § 66.121(a)(2). To aid the insurance carriers in this task, the Insurance Department provided a specimen of an explanatory letter which provides, in part:

[y]ou will not need a lawyer to collect your No–Fault benefits. If you are injured, (contact your insurance company or your insurance agent) to get claim forms from all related parties (you, your employer, the hospital, etc.). Lawsuits for non-economic loss, such as 'pain and suffering' will be allowed [under a limited set of circumstances].

31 Pa.Code § 66.121(b)C.

gor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

The resolution of the instant dispute rests upon the proper interpretation of these penal provisions.

When we analyze and interpret a statute, we do so with the goal in mind of ascertaining and giving effect to the intent of the General Assembly. 1 Pa.C.S.A. § 1921(a). To aid us in this task, we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1501–1991, which requires that we construe a statute in such a manner as to give effect to all of its provisions. When we so construe a statute, we must follow the letter of the statute if its words are unambiguous, 1 Pa.C.S.A. § 1921(b), but when the words are not explicit, we must ascertain the General Assembly's intent by looking to:

(1) The occasion and necessity of the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be obtained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c).

Generally, we interpret an insurance statute liberally to effectuate its purpose. *Antanovich v. Allstate Ins. Co.,* 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985). However, when the statute contains penal provisions, such provisions must be strictly construed. *Smith v. Harleysville Ins. Co.,* 275 Pa.Super. 246, 248, 418 A.2d 705, 706 (1980); 1 Pa.C.S.A. § 1928(b)(1). With these basic tenets in mind, we turn our attention to the No-fault Act.

 Recovery of attorneys' fees under section 1009.-107(1) is dependent upon an insured proving two things. First, that no-fault benefits are overdue and secondly, that the benefits were not paid until after the insurer receives notice that a claimant has retained legal representation. There is no dispute as to the interpretation of the second element. Rather, this conflict focuses, in part, upon the issue of when no-fault benefits are overdue.

Overdue benefits are defined as benefits which have not been paid within thirty days of receipt of "reasonable proof of the fact and the amount of loss sustained." 40 P.S. § 1009.106(a)(2). Thus, it would appear that no-fault benefits are always and automatically overdue if not paid within thirty days. *See Hayes v. Erie Ins. Exchange,* 493 Pa. 150, 425 A.2d 419 (1981) (interest accrues on overdue benefits without regard as to whether the insurer had a good faith reason for denying the claim). However, we cannot stop our analysis here.

Section 1009.106(a)(5) provides that an insurance carrier who rejects a claim for no-fault benefits, must give written notice of the denial within thirty days from receipt of reasonable proof of loss. Although timely rejection of a claim does not toll the running of interest, it should preclude imposition of counsel fees under section 1009.107(1).[7] In *Lee v. Safeguard Mut. Ins. Co.,* 379 Pa.Super. 104, 549 A.2d 927 (1988), *alloc. denied,* 522 Pa. 596, 562 A.2d 320 (1989), we analyzed sections 1009.107(1) and 107(3) and found that section 1009.107(1) was intended to "ensure a

7. We reach this decision after giving due consideration to our Supreme Court's decision in *Hayes, supra.* In *Hayes,* the issue before the court was whether overdue benefits bore interest at eighteen percent when a no-fault carrier denies a claim in good faith or with reasonable foundation. There, the Supreme Court found that to make the insured whole, the legislature intended for interest to accumulate without regard as to why the benefits were overdue. *Id.,* 493 Pa. at 154–5, 425 A.2d at 421. In so finding, the *Hayes* court noted that the imposition of interest was not penal, but "a reasonable incentive for the prompt settlement of just demands." *Id.,* 493 Pa. at 160, 425 A.2d at 424. Thus, that decision is inapposite to the instant dispute because here we must interpret the provisions of the No-fault Act which are obviously intended to punish offensive conduct.

fair system whereby promptness is encouraged and tardiness penalized." *Id.*, 379 Pa.Superior Ct. at 115, 549 A.2d at 932. Thus, we held that in order to ensure that promptness is rewarded and tardiness penalized, an insured is entitled to attorneys' fees under section 1009.107(1) when the following factors coalesce:

(1) On a particular date, appellant provided reasonable proof of the fact of loss and amount of loss incurred;

(2) Appellant was not paid no-fault benefits by appellee prior to the filing of a notice of representation by appellant's counsel;

(3) A notice of representation was filed when payments were overdue pursuant to section 106; and

(4) Appellee did not notify appellant within thirty days 'after the receipt of reasonable proof of loss' of any denial of benefits.

*Id.*, 379 Pa.Superior Ct. at 118, 549 A.2d at 934. When any of these factors are absent, a claimant cannot successfully pursue a claim for counsel fees under section 1009.107(1).[8] If we decide otherwise, we will render an entire provision of

---

**8.** Angino asserts that when our court set forth the four factors necessary for recovery under section 1009.107(1), we did not need to address the effect of timely denial of a claim; therefore, the fourth element stated in *Lee* is dicta and should not be followed by this court. We disagree.

In *Lee*, the claimant sought attorneys' fees under sections 1009.-107(1) and 107(3). The trial court denied the claim and an appeal was taken to this court, wherein the appellant argued that the trial court erred in failing to award attorneys' fees. Before addressing the merits of the appeal, we analyzed the No-fault Act and set forth what we found to be the requirements for recovery under both sections. We then applied the facts of that particular case to the requirements and found that recovery could not be had because claimant had failed to provide reasonable proof of loss. *Id.* 379 Pa.Super. at 118, 549 A.2d at 934.

Although the facts presented to us in *Lee* did not require us to determine if appellant satisfied all four prerequisites, we were required to analyze the No-fault Act and establish the requisites for recovery under section 1009.107(1). Therefore, we conclude that our determination that recovery under section 1009.107(1) is precluded by timely denial of a claim is not dicta, but an accurate statement of the law.

Even if our decision in *Lee* is dicta, it is worthy of consideration when resolving the instant dispute. It was necessary for us to review the No-fault Act and ascertain the intent of the legislature. When we

the No-fault Act mere surplusage. *See Habecker v. Nationwide Ins. Co.*, 299 Pa.Super. 463, 471, 445 A.2d 1222, 1226 (1982) (when construing a statute, courts must attempt to give effect to every word, thereby avoiding creation of surplusage in the statute); 1 Pa.C.S.A. §§ 1921(a) and 1922(2).

Section 1009.107(3) penalizes no-fault insurers for denying a claim without a reasonable foundation. If we interpret section 1009.107(1) as mandating the imposition of attorneys' fees whenever benefits are overdue, section 1009.107(3) becomes meaningless. No longer would claimants look to section 1009.107(3) for recovery of benefits. Aggrieved claimants could recover their counsel fees by a mere showing of tardy payment. They would never have to prove unreasonable conduct on the part of the no-fault carrier. If the General Assembly intended such a result, they would not have enacted section 1009.107(3).

To give effect to section 1009.107(3), an insurer's liability under section 1009.107(1) must come to an end at some definite point, and under the provisions of the No-fault Act it does. Because section 1009.106(a)(5) requires timely rejection of no-fault claims, it logically follows that timely rejection of a claim should terminate an insured's liability under section 1009.107(1). Therefore, we hold that a no-fault insurance carrier's potential liability under section 1009.107(1) ends upon timely rejection of a no-fault claim. Once such a rejection is made, claimants must look to section 1009.107(3) for recovery of counsel fees.

We are not alone in so interpreting the No-fault Act. The Pennsylvania Trial Lawyers Association has published a treatise entitled The Pennsylvania No-fault Motor Vehicle

conducted this review, we determined that liability under section 1009.107(1) ends upon timely denial of a claim. This is the same determination that we came to in the instant case. Therefore, we hold that our decision in *Lee* accurately states the requisites for recovery under section 1009.107(1) and continues to be the law in Pennsylvania. *See Labrador v. City of Philadelphia,* 134 Pa.Cmwlth. 427, 578 A.2d 634 (1990) (recovery of counsel fees denied because insurer timely denied the claim for no-fault benefits).

Insurance Act which analyzes and interprets the No-fault Act. We reviewed this publication to learn how the trial bar interpreted section 1009.107(1). During our review, we encountered the following passage:

> Section 107(1) provides for obligor-paid attorney's fees in circumstances in which the insurance carrier has simply not timely reacted to the presentation of a no-fault claim either by paying the benefits or *advising the claimant or his counsel of the basis for denial of payment.* Again, whether the denial was reasonable or unreasonable is irrelevant to entitlement to attorneys fees if the basis for denial is not timely asserted.
>
> Section 107(1) evidences a clear policy purpose that if by reason of an obligor's failure to notify a claimant why he is not being paid the claimant is required to obtain counsel, he is entitled to a reasonable attorney's fee as a matter of right based on the time and effort expended by counsel. *Assuming timely notification is given, then the criterion for the award of attorney's fees is tested under the standard set forth in Section 107(3).*

L. Swartz, R. Angino & C. Shepard, The Pennsylvania No–Fault Motor Vehicle Insurance Act § 1:39.3.1 (Supp.1983) [hereinafter PA No–Fault] (emphasis added).[9] We concur with their interpretation of section 1009.107(1).

In the instant case, the trial court purports to follow our decision in *Lee, supra.* However, it then awards attorneys' fees pursuant to section 1009.107(1). We find that such an award cannot be made.

When we apply the facts of the instant case to the requisites for recovery under section 1009.107(1), it is readily apparent that attorneys' fees cannot be awarded under this section. The record reveals that on May 19, 1977, Angino made a written claim for work loss benefits. Five days later, this claim was denied as required by section

---

**9.** In light of Attorney Angino's co-authorship of this treatise and his belief that it represents the only authoritative source on the No-fault Act, we find it interesting that Attorney Angino now asserts that such an interpretation is erroneous.

1009.106(a)(5). By timely denial of the claim, Donegal forever cut-off its exposure to liability under section 1009.-107(1).

■ Angino also asserts that it is entitled to attorney's fees under section 1009.107(3). Despite the trial court's decision to the contrary, we agree.[10]

Following our Supreme Court's decision in *Freeze, supra,* appellant was entitled to payment of work loss benefits plus interest at eighteen percent. At this juncture, Donegal was not liable for counsel fees under section 1009.107(3) because its initial denial of the claim was based upon a reasonable foundation. *See Rago v. State Farm Mut. Auto. Ins. Co.,* 355 Pa.Super. 207, 214–15, 513 A.2d 391, 395 (1986) (until an appellate court construes the No-fault act to determine if an insurance carrier is liable to pay certain benefits, the lack of guidance from the courts is a reasonable basis for denying a claim for such benefits). However, its actions following the *Freeze* decision justify the imposition of such fees.

Following the Supreme Court's decision in this case, Donegal attempted to pay the work loss benefits plus interest. However, the parties were unable to agree upon the amount of interest due. Appellant claimed that interest should accrue beginning thirty days after the initial application for benefits was filed on January 24, 1977 or at the latest, thirty days after the claim for work loss benefits was made on May 19, 1977. Donegal claimed that neither date was the correct starting point and asserted that interest did

**10.** Donegal contends that Angino cannot raise this issue on appeal because it failed to take a timely appeal from the trial court's April 29, 1988 order. We disagree.

In its motion for summary judgement, Angino asked for attorneys' fees pursuant to sections 1009.107(1) and (3). The trial court found that attorneys' fees could be awarded under section 1009.107(1) and directed the parties to settle this matter. However, the trial court's opinion and order are silent as to section 1009.107(3). After reviewing the 1988 order, we find that as to the issue of counsel fees, the order is interlocutory. There is no final disposition of this issue. Angino was not put out of court. In fact, even the order recognizes that this issue has not been resolved because it states that a hearing will be scheduled if the parties cannot come to terms on an appropriate fee. Therefore, we hold that this issue is properly before us.

not begin to run until appellant submitted actuarial information on April 18, 1979. The trial court found that Donegal's position was reasonable and therefore, Angino was not entitled to counsel fees under section 1009.107(3). (T.C.O. at 3).[11]

Donegal's claim that interest did not accrue until after it received actuarial information on the deceased is untenable. As we discussed *supra*, the No-fault Act was enacted to make victims of motor vehicle accidents whole without resort to the judicial process, including retention of counsel. By requiring its insured to obtain and submit actuarial information, Donegal attempted to circumvent our legislature's intent. We do not believe that the average citizen of this Commonwealth can readily obtain actuarial information, unless they retain legal representation. In fact, Donegal had all the information necessary to pay this claim before it received the actuarial information. (N.T. 5/31/ 1989 at 13–20). Therefore, its refusal to pay interest from June of 1977 was baseless and Angino is entitled to a reasonable fee for recovering the additional interest.

■ The trial court found that Angino had expended forty-four and and a quarter hours in recovering the additional interest from Donegal. (T.C.O. at 6). We find this determination to be adequately supported by the record and hold that Angino is entitled to a reasonable fee for these hours. However, Angino is not entitled to counsel fees under section 1009.107(3) for the time spent prior to our Supreme Court's resolution of the work loss issue, nor for the time expended pursuing its request for attorneys' fees.

■ Finally, Angino argues that it is entitled to a fee in excess of the $200.00 per hour awarded by the trial court. We find that $200.00 per hour is an adequate rate of compensation for resolving the interest issue.

The determination of the reasonableness of attorneys' fees is a matter relegated to the sound discretion of the trial judge. *Ware v. United States Fidelity & Guar. Co.*,

11. T.C.O. denotes Trial Court Opinion of October 10, 1990.

395 Pa.Super. 501, 509, 577 A.2d 902, 905 (1990). On appeal, we will only reverse the trial judge if we find an abuse of discretion or an error of law. *Gilmore v. Dondero*, 399 Pa.Super. 599, 605, 582 A.2d 1106, 1108 (1990); *Romano v. Lubin*, 365 Pa.Super. 627, 630, 530 A.2d 487, 488 (1987). We will find an abuse of discretion if the award of attorneys' fees is based on erroneous factual findings or irrelevant legal factors. *Dondero, supra.*

In determining whether counsel fees are reasonable, a trial court must consider:

> ... the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the result he was able to obtain; ... and, very importantly, the amount of money or the value of property in question.

*In re Estate of LaRocca*, 431 Pa. 542, 546, 246 A.2d 337, 339 (1968). After reviewing the record, we find that the trial court awarded a fee which satisfied the factors enunciated in *LaRocca*.

The trial court had before it a request for $348,152 in counsel fees which appears to be based on an hourly rate of between $500 and $2,000.[12] Such a rate of compensation is unthinkable in this case. Counsel fees were awarded in this case for recovering an additional $16,875 of interest for appellant. The trial court found that this required the expenditure of approximately forty-four hours of legal representation and the record indicates that that amount of documentation generated in resolving this issue was minimal. Recovery of the interest due appellant does not in-

12. Angino asserts that this is a reasonable fee based upon contingency fees generated by the law firm. However, Angino has also stated that during the time period involved in recovery of the interest in this case, its hourly fee was between $150.00 and $250.00. (N.T. at 75-8).

volve a complicated or novel legal issue. In light of these facts, an attorneys' fee of $200.00 per hour is reasonable.

We can understand Angino's wish to be compensated for forging a new theory of recovery under the No-fault Act. However, Angino cannot look to the penal provision of this act for such compensation. Counsel knew when it took this case that the amount of money recoverable for its client ranged between $15,000.00 and $30,000.00, plus interest. Counsel was also aware that its ability to recoup attorneys' fees from Donegal was dependent upon whether Donegal's conduct was so egregious as to warrant imposition of the penal provisions of the No-fault Act. Angino understood these risks when it undertook this case and our decision today should come as no surprise. *See* PA No–Fault, *supra,* at § 1:39.3.1.

Accordingly, we affirm the award of counsel fees, but base our affirmance on section 1009.107(3) of the No-fault Act.